23352

AVIATION ASSOCIATES AND CONSULTANTS, INC., Respondent v. JET TIME, INC.; Cobra Drilling Co., Inc.; and Cobra Drilling, Inc., as the successor corporation of the merger of the other named defendants, Appellants.

(402 S.E. (2d) 177)

Supreme Court

*Joel H. Smith, John E. Schmidt, III* and *John F. Kuppens,* all of *Nelson, Mullins, Riley and Scarborough,* Columbia, *for appellants.*

*Richard J. Breibart* and *Robert E. Newton,* both of *Coleman, Sawyer, Breibart and McCauley,* Lexington, *for respondent.*

Submitted Nov. 27, 1990.

Decided Feb. 25, 1991.

HARWELL, Justice:

The sole issue on appeal is whether the trial judge erred in exercising personal jurisdiction over appellant Cobra Drilling, Inc., an Oklahoma corporation. We find that there is a lack of personal jurisdiction and thus, reverse.

## I. FACTS

Respondent Aviation Associates and Consultants, Inc. (Aviation) is a South Carolina corporation engaged in the business of brokering the buying and selling of aircraft. Appellant Cobra Drilling, Inc. (Cobra), the successor corporation of the merger of Jet Time, Inc. and Cobra Drilling Company, Inc., is an Oklahoma corporation in the oil and gas business.

On December 14, 1988, Mike Kullenberg, the vice-president of Aviation, contacted Michael Scears, president of Cobra, regarding a Sabreliner aircraft which Cobra was selling. During the conversation, Kullenberg told Scears that he would like to register the names of two of his company's customers with Cobra in order to protect his commission in the event he sold the aircraft to one of the customers. On the same day, Kullenberg telecopied a letter to Scears listing the names of the customers. The customers registered were "Mr. Ray Corsi, Universal Jet Sales, and Mr. Jim McManus, Jazz Jet, Inc., or anyone associated with or representing the above persons or companies" as their customers. Scears signed the letter and telecopied it back to Kullenberg the same day.

Scears and Kullenberg did not communicate again until mid-January, 1989. In the interim it does not appear that Aviation did anything to facilitate the sale of the aircraft except place one phone call to arrange for one of its customers to in-

spect the aircraft. However, during this time another broker, Martin Sales, Inc. (Martin) called Scears to inquire about the aircraft. Martin made a written offer for the aircraft subject to inspection of the aircraft. After the inspection, Martin withdrew its offer.

On December 30, 1988 Dr. Mark Harrison of Monroe, Louisiana, called Scears and identified himself as the customer for whom Martin had been negotiating. Harrison negotiated the purchase of the aircraft on his own behalf and agreed to indemnify Cobra against any claims for a commission that might be made by Martin. The closing took place in Oklahoma.

Several days after the sale, on January 16, 1989, Kullenberg called Scears and learned that Scears had sold the aircraft to Harrison. Kullenberg discovered that Harrison does business as Jazz Jet. Since Kullenberg had registered the name Jazz Jet with Scears, Kullenberg demanded a commission on the sale. Scears denied owing Kullenberg the commission. Aviation then instituted this action alleging breach of contract, breach of contract implied in law, quantum meruit, breach of contract accompanied by a fraudulent act, conversion, and unfair trade practices. However, the only issue before this Court is whether the trial judge erred in finding that it could assert personal jurisdiction over appellant Cobra.

## II. DISCUSSION

The party seeking to invoke personal jurisdiction against a foreign corporation by utilization of our long-arm statute has the burden of establishing jurisdiction. *White v. Stephens*, 300 S.C. 241, 387 S.E. (2d) 260 (1990). However, at the pretrial stage of determination of jurisdiction, the plaintiff needs only to make a *prima facie* showing of jurisdiction by his pleadings and affidavits that the trial judge should exercise jurisdiction. *Id.*

The determination of whether a court may exercise personal jurisdiction over a nonresident involves a two step analysis. First, the trial judge must determine that the South Carolina long-arm statute applies. Second, the trial judge must determine that the nonresident's contacts in South Carolina are sufficient to satisfy due process requirements. *Colite Industries, Inc. v. G.W. Murphy Construction*

*Co.,* 297 S.C. 426, 377 S.E. (2d) 321 (1989). Here, the trial judge determined that both steps of the analysis were satisfied. Cobra argues that the trial judge's assertion of personal jurisdiction was erroneous because its conduct does not fall within the long-arm statute and because it does not have contacts with South Carolina upon which jurisdiction can be based. We agree.

### A. *Long-Arm Statute*

Aviation's allegations of personal jurisdiction are based on S.C. Code Ann. § 36-2-803(1)(a) and (g) (1976) which provide:

A court may exercise personal jurisdiction over a person who acts directly or by agent as to a cause of action arising from the person's
(a) transacting business in this State;
[or] . . .
(g) entry into a contract to be performed in whole or in part by either party in this State; . . .

Aviation first contends that Cobra falls within § 36-2-803(1)(a) of the long-arm statute because it transacted business in South Carolina. The only basis of the trial judge's finding that Cobra transacted business in South Carolina was that Cobra entered into a contract in South Carolina. The trial judge found that the contract was entered into in South Carolina when Cobra "offered to sell the plane to a customer of [Aviation] for a specific price and the plaintiff accepted the offer in South Carolina." However, this finding is wholly unsupported by the evidence, and as such, is clearly erroneous. The evidence plainly reveals that Aviation never accepted an offer to buy the aircraft. If there is any contract at all involved in this case, it stems from the letter listing the prospective customers, and it is a contract to protect Aviation's commission in the event it sold the aircraft to one of the listed customers, not a contract to buy Cobra's aircraft.

Further, we find that if a contract was formed by the letter, it was formed in Oklahoma rather than in South Carolina. Assuming the letter was a contract, the contract was entered into when Scears accepted the offer in Oklahoma by signing the letter. It is well-settled that "a contract is executed when

the last act necessary for its formation is done and at the place where the final act is done." *Askins v. Firedoor Corp.*, 281 S.C. 611, 616, n. 3, 316 S.E. (2d) 713, 716, n. 3 (1984). *See also Eagle Aviation, Inc. v. Galin*, No. 3: 89-1561-0 (D.S.C. filed Nov. 15, 1989) (contract signed and accepted in Connecticut, thus entered into in Connecticut). Since there is no other contact or activity by Cobra which could constitute the transaction of business, we conclude that the jurisdictional requirement of § 36-2-803(1)(a) was not satisfied.

Aviation next contends that Cobra falls within § 36-2-803(1)(g) of the long-arm statute because it entered into a contract to be performed in whole or in part in South Carolina when it received, signed, and returned Kullenberg's letter listing the registered customers. We disagree, and find that a *prima facie* showing of a contract to be performed in South Carolina was not made. Aviation asserts that if it had obtained a buyer, it would have performed its brokerage services, completing the paperwork to close the sale and escrowing the funds, in South Carolina. However, the letter neither contemplated nor required any action to take place in South Carolina. Under these facts, we cannot conclude that the alleged contract was to be performed in South Carolina.

Thus, we find that Aviation failed to make the requisite showing to invoke jurisdiction under the long-arm statute. However, even if Aviation had succeeded in establishing jurisdiction under the long-arm statute, we would still reverse the trial judge's finding of personal jurisdiction based on the due process prong of the analysis.

### B. *Due Process*

Before personal jurisdiction may be exercised over a nonresident, due process requires that there exist minimum contacts between the defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and justice. *Colite, supra.* In conducting this inquiry, the focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S. Ct. 199, 2 L. Ed. (2d) 223 (1957). *See also World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. (2d) 490, 501 (1980) ("it is the defen-

dant's conduct and connection with the forum state such that he should reasonably anticipate being haled into court there"); *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873, 80 L. Ed. (2d) 404, 412 (1984) ("unilateral activity of another party or a third person is not an appropriate consideration"); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. (2d) 1283, 1298 (1958) ("unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"). The defendant must purposefully avail itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla, Id.*

This Court has applied four factors in determining whether due process requirements are satisfied: (1) the duration of the defendant's activity in this State; (2) the character and circumstances of its acts; (3) the inconvenience to the parties; and (4) the State's interest in exercising jurisdiction. *Colite*, 297 S.C. at 429, 377 S.E. (2d) at 322. The duration of Cobra's activities in this State was minimal. The only activity which Cobra directed towards South Carolina was the letter which it signed and returned at Aviation's request. Although a single act may support jurisdiction, it must create a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. (2d) 528 (1985). Cobra's single act of returning the letter did not create a substantial connection with South Carolina. Even assuming the letter was a contract, it is well established that an "individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum," *Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185, 85 L. Ed. (2d) at 545, at least where the defendant has established no meaningful contacts, ties, or relations. *Id.* at 472, 105 S. Ct. at 2181, 85 L. Ed. (2d) at 540.

In regard to the character and circumstances of Cobra's acts, there is nothing before this Court that indicates that Cobra purposefully availed itself of the privilege of conducting business activities in South Carolina to the extent necessary to find personal jurisdiction over it in this case. Every communication between the parties was initiated by Aviation. Cobra merely responded to Aviation's unsolicited, unilateral contact

by talking on the telephone to Aviation when Aviation called, and returning one telecopy in which it acquiesced to Aviation's request to register two of its customers with Cobra. This type of attenuated, isolated contact should not subject Cobra to suit in the initiator's home forum. If the "minimum contacts inquiry can be manipulated to create personal jurisdiction where an in-state resident manufactures contacts between its home forum and a nonresident entity by means of its own extraterritorial inducements, then very little legal predictability remains to enable potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will subject them to suit." *Wells American Corp. v. Sunshine Electronics*, 717 F. Supp. 1121, 1125, n. 3 (D.S.C. 1989).

In addition, while it may be inconvenient for Aviation to litigate this case in Oklahoma, it would be no less inconvenient for Cobra to have to defend this case in South Carolina. Since Aviation solicited the out-of-state business, it should be prepared to bring any lawsuits arising out of the business it seeks in Oklahoma. Finally, while South Carolina has an interest in providing redress for its citizens, that interest is diminished when no business was transacted in this State and any contract formed was not to be performed in this State. In fact, nothing which is the subject of this litigation has taken place in South Carolina. At all times, Cobra's agents and its plane remained in Oklahoma. The sale of the plane, as well as any resulting breach, also took place in Oklahoma.

Thus, we conclude that Cobra's mere acquiescence to Aviation's unilateral, unsolicited attempt to sell Cobra's plane does not constitute minimum contacts comporting with due process. *See Wells American Corp. v. Sunshine Electronics*, 717 F. Supp. 1121 (D.S.C. 1989) (Illinois corporation's mere acquiescence to South Carolina corporation's unilateral, unsolicited orders of specially manufactured goods did not establish minimum contacts sufficient to subject it to suit in South Carolina).

Accordingly, the trial judge's finding that personal jurisdiction existed is

Reversed.

CHANDLER, FINNEY and TOAL, JJ., concur.

GREGORY, C.J., not participating.