594 S.E.2d 878

**Fred MOOSALLY, Joseph Miceli, John Morse and Robert D. Finney, Appellants,**

v.

**W.W. NORTON & COMPANY, INC., Charles C. Thompson, II, and Daniel Meyer, Respondents.**

**Dale E. Mortensen, Appellant,**

v.

**W.W. Norton & Company, Inc., Charles C. Thompson, II, and Daniel Meyer, Respondents.**

No. 3769.

Court of Appeals of South Carolina.

Heard March 11, 2004.

Decided April 5, 2004.

322

Stephen F. DeAntonio, of Charleston, for Appellants.

John J. Kerr and David B. McCormack, both of Charleston, for Respondents W.W. Norton & Company, Inc., and Charles C. Thompson, II.

Daniel P. Meyer, of Washington, D.C., pro se.

ANDERSON, J.:

Fred Moosally, Joseph Miceli, John Morse, Robert D. Finney and Dale E. Mortensen (collectively referred to as "Appellants") appeal from the trial court's grant of motions to dismiss for lack of personal jurisdiction to W.W. Norton & Company, Inc., Charles C. Thompson, II, and Daniel Meyer (collectively referred to as "Respondents"). Additionally, Appellants appeal from the trial court's grant of Respondent W.W. Norton's motion to dismiss pursuant to S.C.Code Ann. § 15–5–150 (1977), the door closing statute. We affirm as to Thompson and Meyer. We reverse and remand as to W.W. Norton.

## FACTUAL/PROCEDURAL BACKGROUND

On the morning of April 19, 1989, the center 16″ gun in Gun Turret Two of the battleship USS IOWA exploded, killing 47 sailors. As an event of national concern, the explosion was made the subject of two CBS *60 Minutes* programs of which Respondent Thompson, a Virginia resident, was a producer. Subsequently, Respondent W.W. Norton, a New York publishing company, contracted with Thompson to write a book explaining the events leading up to and following the explosion aboard the battleship. In preparing his manuscript, Thompson interviewed over 200 individuals, one of whom was Respondent Meyer, a resident of Maryland. The ensuing book, *A Glimpse of Hell,* was first published in March 1999 and distributed throughout the United States, including South Carolina.

In March and April of 2001, Appellants filed suit against Respondents, asserting causes of action for libel, false light privacy, and conspiracy.[1] Specifically, Moosally, Miceli,

---

1. Appellants Moosally, Miceli, Morse, and Finney filed an amended complaint on March 15, 2001. Thereafter, on April 12, 2001, Appellant Mortensen filed an amended complaint alleging the same causes of action.

Morse, and Finney allege the book contains numerous falsities that suggest their actions led to the deaths of the sailors aboard the battleship. Mortensen avers "the book contains numerous falsehoods, inaccuracies and defamatory statements that both libel and slander the Plaintiff."

In April of 2001, Respondents filed motions to dismiss pursuant to Rule 12(b)(2), SCRCP, for lack of personal jurisdiction. Additionally, Respondent W.W. Norton moved to dismiss the complaints pursuant to S.C.Code Ann. § 15–5–150 (1977), commonly known as South Carolina's door closing statute. Following a hearing, the Circuit Court entered separate orders dismissing the claims against all three Respondents.

## STANDARD OF REVIEW

The question of personal jurisdiction over a nonresident defendant is one which must be resolved upon the facts of each particular case. *Engineered Prods. v. Cleveland Crane & Eng'g*, 262 S.C. 1, 201 S.E.2d 921 (1974). The decision of the trial court should be affirmed unless unsupported by the evidence or influenced by an error of law. *Engineered Prods.*, 262 S.C. at 4, 201 S.E.2d at 922; *see also Hammond v. Cummins Engine Co.*, 287 S.C. 200, 336 S.E.2d 867 (1985) (stating that this Court is bound by Circuit Court's finding that nonresident defendant is subject to its jurisdiction absent determination that Circuit Court's ruling is without evidentiary support or controlled by error of law); *Industrial Equip. Co. v. Frank G. Hough Co.*, 218 S.C. 169, 173, 61 S.E.2d 884, 885 (1950) ("[T]his Court has adhered to the rule that a finding by the Circuit Court as to jurisdiction or lack of jurisdiction will not be disturbed on appeal unless wholly unsupported by the evidence or manifestly influenced or controlled by error of law.").

It is well-settled that the party seeking to invoke personal jurisdiction over a non-resident defendant via our long-arm statute bears the burden of proving the existence of personal jurisdiction. *Southern Plastics Co. v. Southern Commerce Bank*, 310 S.C. 256, 423 S.E.2d 128 (1992); *Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 402 S.E.2d 177 (1991); *South Carolina Dep't of Soc. Servs. v.*

*Basnight,* 346 S.C. 241, 551 S.E.2d 274 (Ct.App.2001). At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits. *Mid–State Distribs., Inc. v. Century Importers, Inc.,* 310 S.C. 330, 426 S.E.2d 777 (1993); *White v. Stephens,* 300 S.C. 241, 387 S.E.2d 260 (1990); *International Mariculture Res. v. Grant,* 336 S.C. 434, 520 S.E.2d 160 (Ct.App.1999).

## *LAW/ANALYSIS*

## I. JURISDICTION

Appellants argue the Circuit Court erred in dismissing the claims against Meyer, Thompson and W.W. Norton for lack of personal jurisdiction.

■■ The determination of whether a court may exercise personal jurisdiction over a nonresident defendant involves a two-step analysis. *Hammond v. Butler, Means, Evins & Brown,* 300 S.C. 458, 388 S.E.2d 796 (1990); *South Carolina Dep't of Soc. Servs. v. Basnight,* 346 S.C. 241, 551 S.E.2d 274 (Ct.App.2001). First, in order for the courts to have statutory authority to exercise jurisdiction, the nonresident defendant's conduct must meet the requirements of South Carolina's long-arm statute. *White v. Stephens,* 300 S.C. 241, 387 S.E.2d 260 (1990). Second, the exercise of jurisdiction must comport with the requirements of the due process clause. *Southern Plastics Co. v. Southern Commerce Bank,* 310 S.C. 256, 423 S.E.2d 128 (1992). The defendant must have sufficient contacts with South Carolina so that the constitutional standards of due process are not violated. *White,* 300 S.C. at 245, 387 S.E.2d at 262; *Basnight,* 346 S.C. at 246, 551 S.E.2d at 277; *International Mariculture Res. v. Grant,* 336 S.C. 434, 520 S.E.2d 160 (Ct.App.1999).

South Carolina's long-arm statute provides:

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in the State;

(c) commission of a tortious act in whole or in part in this State;

(d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or

(e) having an interest in, using, or possessing real property in this State; or

(f) contracting to insure any person, property or risk located within this State at the time of contracting; or

(g) entry into a contract to be performed in whole or in part by either party in this State; or

(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him, and such action, if brought in this State, shall not be subject to the provisions of § 15–7–100(3).

S.C.Code Ann. § 36–2–803 (2003).

■ Our long-arm statute, which affords broad power to exercise personal jurisdiction over causes of action arising from tortious injuries in South Carolina, has been construed to extend to the outer limits of the due process clause. *Meyer v. Paschal,* 330 S.C. 175, 498 S.E.2d 635 (1998); *Hammond v. Cummins Engine Co.,* 287 S.C. 200, 336 S.E.2d 867 (1985); *see also Cozi Investments v. Schneider,* 272 S.C. 354, 252 S.E.2d 116 (1979) (stating that South Carolina's long-arm statute has been construed as a grant of jurisdiction as broad as constitutionally permissible; hence, parameters of statute are restricted only by due process limitations). Because we treat our long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction in this case would violate the strictures of due process. *See Sonoco Products Co. v. Inteplast Corp.,* 867 F.Supp. 352, 354 (D.S.C.1994) ("The South Carolina long-arm

statute ... has been interpreted to reach to the limits of due process"; "[t]herefore, the determination of personal jurisdiction in South Carolina compresses into a due process assessment of minimum contacts and fair play."); *Ryobi America Corp. v. Peters,* 815 F.Supp. 172, 175 (D.S.C.1993) ("The Long–Arm Statute in South Carolina is construed to extend jurisdiction to the limits of Due Process. Because the extent of the statute and the relevant constitutional tests are the same, the inquiry for this court is simply whether the exercise of jurisdiction over Jerry Peters violates his right to Due Process.") (citation omitted).

The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. *Asahi Metal Ind. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.,* 303 S.C. 502, 402 S.E.2d 177 (1991); *see also Quill Corp. v. North Dakota,* 504 U.S. 298, 307, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) ("[W]e have abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of Government, to require it to defend the suit in that State."); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (noting due process clause requires that maintenance of lawsuit against nonresident must not offend traditional notions of fair play and substantial justice). The due process requirement mandates the defendant possess sufficient minimum contacts with the forum state, so that he could reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Atlantic Soft Drink Co. v. South Carolina Nat'l Bank,* 287 S.C. 228, 336 S.E.2d 876 (1985).

In deciding whether a finding of minimum contacts comports with the due process requirements of traditional notions of fair play and substantial justice, the court must consider: (1) the duration of the activity of the nonresident within the state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction. *Clark v. Key*, 304 S.C. 497, 405 S.E.2d 599 (1991); *Colite Indus., Inc. v. G.W. Murphy Constr. Co.*, 297 S.C. 426, 377 S.E.2d 321 (1989); *South Carolina Dep't of Soc. Servs. v. Basnight*, 346 S.C. 241, 551 S.E.2d 274 (Ct.App.2001). A single transaction is sufficient to confer jurisdiction if these factors are met. *Colite Indus.*, 297 S.C. at 429, 377 S.E.2d at 322; *Hammond*, 287 S.C. at 203, 336 S.E.2d at 868–69; *see also Askins v. Firedoor Corp.*, 281 S.C. 611, 616, 316 S.E.2d 713, 716 (Ct.App.1984) ("The cases are legion that a single contact with the forum state is sufficient to give its courts personal jurisdiction over a nonresident if the contact gives rise to, or figures prominently in the cause of action under consideration."). Although a single act may support jurisdiction, it must create a "substantial connection" with the forum. *Burger King Corp.*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174; *White v. Stephens*, 300 S.C. 241, 247, 387 S.E.2d 260, 263 (1990). A single act that causes harm in this State may create sufficient minimum contacts where the harm arises out of or relates to that act. *Southern Plastics Co. v. Southern Commerce Bank*, 310 S.C. 256, 423 S.E.2d 128 (1992).

The determination of whether the requirements of due process are satisfied involves a two-prong analysis: (1) the "power" prong, in which minimum contacts provide courts the "power" to adjudicate the action; and (2) the "fairness" prong, which requires the exercise of jurisdiction to be "reasonable" or "fair." *Southern Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131. "If either prong fails, the exercise of personal jurisdiction over the [nonresident] defendant fails to comport with the requirements of due process." *Id.*

Under the power prong, a minimum contacts analysis requires a court to find that the defendant directed its activities to residents of South Carolina and that the cause of

action arises out of or relates to those activities. *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174; *Southern Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131. Without minimum contacts, the court does not have the "power" to adjudicate the action. *Southern Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Southern Plastics Co.*, 310 S.C. at 261, 423 S.E.2d at 131; *see also Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174 (stating the constitutional touchstone of determination whether exercise of personal jurisdiction comports with due process is whether defendant purposefully established minimum contacts in forum state). The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174; *Southern Plastics Co.*, 310 S.C. at 262, 423 S.E.2d at 132. Whether the constitutional requirement of minimum contacts has been met depends on the facts of each case. *Burger King Corp.*, 471 U.S. at 485–86, 105 S.Ct. 2174; *Security Credit Leasing, Inc. v. Armaly*, 339 S.C. 533, 529 S.E.2d 283 (Ct.App.2000).

■■■ Under the fairness prong, we examine such factors as the burden on the defendant, the extent of the plaintiff's interest, South Carolina's interest, efficiency of adjudication, and the several states' interest in substantive social policies. *See Southern Plastics Co.*, 310 S.C. at 263, 423 S.E.2d at 132. While choice of law analysis is separate and distinct from personal jurisdiction analysis, which state's law controls is a factor to be considered under the fairness prong of due process. *Burger King Corp.*, 471 U.S. at 481–82, 105 S.Ct. 2174.

Because the due process requirements must be met as to each defendant, we must assess individually each defendant's contacts with South Carolina. *See Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Allen v. Columbia Fin. Mgmt., Ltd.*, 297 S.C. 481, 377 S.E.2d 352 (Ct.App.1988).

## A.  Meyer

Initially, we note Meyer's contacts with South Carolina appear to be limited to this litigation.  Appellants aver that Meyer has satisfied the minimum contacts requirement through assistance he gave to Thompson as one of the book's sources and through his work on the movie version of the book.  Notably, none of these things were done within South Carolina.  One does not "purposefully avail" himself of this State's laws merely by providing information to an author about an event that did not occur in South Carolina.  To hold otherwise would be to extend jurisdiction over anyone interviewed by any publication about any event, no matter where it occurred.  Indeed, such are the "random" and "fortuitous" contacts the due process clause precludes from serving as the basis for jurisdiction.  *See Southern Plastics Co.,* 310 S.C. at 262, 423 S.E.2d at 132.

Because Meyer's contacts with this state are virtually nonexistent, the power prong of the due process analysis is not satisfied.  Thus, the Circuit Court correctly determined that it could not properly exercise jurisdiction over Meyer.  *See Southern Plastics Co.,* 310 S.C. at 261, 423 S.E.2d at 131 ("If either prong fails, the exercise of personal jurisdiction over the defendant fails to comport with the requirements of due process.").

## B.  Thompson

Appellants claim the minimum contacts requirement is met as to Thompson.  We disagree with this assertion.

Appellants essentially allege that the following activities by Thompson satisfy the minimum contacts requirement:  (1) Thompson was a producer on the television show *60 Minutes,* which airs in South Carolina;  (2) he attended a funeral in South Carolina in 1972 as a reporter for CBS;  (3) copies of his book were sold in South Carolina;  (4) a movie version of his book was aired in South Carolina on the FX network;  and (5) he "made at least one business call to South Carolina for information on the IOWA." Thompson's personal contacts with South Carolina consisted of one telephone call and attendance at a funeral in 1972.  Appellants have cited no authority indicating that involvement with a nationally distributed televi-

sion program is sufficient to satisfy minimum contacts. Moreover, an individual does not "purposefully avail" himself of the laws of this State merely by virtue of having authored a single literary work on a topic of national interest. *See Southern Plastics Co.*, 310 S.C. at 262, 423 S.E.2d at 132.

Because the subject matter of Thompson's manuscript was an event of national interest that occurred outside South Carolina, it does not follow that his activity of pressing pen to paper was directed to the residents of South Carolina. The fruits of his labor—be it in literary or in cinematic form—arrived in South Carolina not through his efforts, but through the efforts of others, and therefore cannot serve as the basis for jurisdiction. *See Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 507, 402 S.E.2d 177, 180 (1991) ("[T]he focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity."); *Allen v. Columbia Fin. Mgmt., Ltd.*, 297 S.C. 481, 490, 377 S.E.2d 352, 357 (Ct.App.1988) ("Due Process requires us to examine each [defendant's] own contacts with South Carolina. We decline to attribute the contacts of one alleged conspirator to another alleged conspirator.") (citation omitted).

The "power" prong of the due process analysis is not met as to Thompson. Consequently, the trial court correctly ruled that it lacked jurisdiction.

### C. W.W. Norton

■ Appellants contend the Circuit Court had personal jurisdiction over W.W. Norton. We agree.

Initially, W.W. Norton admits that it is " 'doing business' in South Carolina for purposes of the long-arm statute."

In analyzing the second step necessary to exercise personal jurisdiction over a nonresident defendant, we examine whether the exercise of personal jurisdiction over W.W. Norton comports with the requirements of the due process clause. *See Southern Plastics Co. v. Southern Commerce Bank*, 310 S.C. 256, 423 S.E.2d 128 (1992).

In support of their argument that the Circuit Court had jurisdiction over W.W. Norton, Appellants cite *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), where the United States Supreme Court applied

the minimum contacts analysis to allegations of libel. In *Keeton*, a New York resident brought a libel suit in a New Hampshire court against a nationally circulated magazine publisher incorporated in Ohio. Holding that the sale of 10,000 to 15,000 copies of the magazine in New Hampshire each month was sufficient to support the assertion of jurisdiction in a libel action based on the magazine's contents, the Court noted that "regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Keeton*, 465 U.S. at 774, 104 S.Ct. 1473; *see also Burger King*, 471 U.S. at 473, 105 S.Ct. 2174 ("[A] publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story.").

Similarly, W.W. Norton has continually endeavored to exploit the South Carolina market. W.W. Norton produced discovery documents and responses including a list of approximately 315 bookstores in South Carolina in which W.W. Norton sold books. Many of these books are sold to educational institutions in South Carolina. Stephen King, Chief Financial Officer of W.W. Norton, affirmed that twenty-five copies of *A Glimpse of Hell* were sold to bookstores in South Carolina. Furthermore, the book has been purchased by and circulated in libraries in South Carolina. Specifically, the Charleston County Public Library has five copies which have circulated at least forty-one times. It is reasonable to assume that a library will disseminate books in its collection. The check-out process and procedure constitutes a separate and distinct dissemination of the books which is, in actuality, a republication.

W.W. Norton has published 7,852 titles in the past twenty years and admits "[i]t is fair to assume that at least one copy of each title was distributed in South Carolina." A number of W.W. Norton's employees cover South Carolina as sales representatives and visit college campuses for the purpose of selling books. W.W. Norton has had small book fairs in South Carolina, a media demo, and has hosted a breakfast for the English Department at the College of Charleston. That the Charleston County Public Library system alone owns 2,900 titles published by W.W. Norton is a testament to the publishing company's commercial presence within South Carolina. In

this manner, W.W. Norton has directed its activities at the residents of South Carolina, and it must reasonably anticipate being haled into court here in a libel action based on the contents of one of its publications. *See Keeton,* 465 U.S. at 775–76, 104 S.Ct. 1473. W.W. Norton's continual practice of marketing and distributing books in South Carolina satisfies the power prong of the due process analysis.

With the power prong satisfied, we turn next to the fairness prong, which requires the exercise of jurisdiction to be "reasonable" or "fair." *See Southern Plastics Co. v. Southern Commerce Bank,* 310 S.C. 256, 259, 423 S.E.2d 128, 130 (1992). Under this prong, we look to the following factors to determine whether the exercise of personal jurisdiction is fair:

"the burden on the defendant[;] . . . the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient solution to controversies; and the shared interest of the several states in furthering fundamental substantive social policies."

*Southern Plastics Co.,* 310 S.C. at 263, 423 S.E.2d at 132 (quoting *World–Wide Volkswagen Corp.,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980)).

We note that the burden on W.W. Norton is negligible because "[n]o unconstitutional burden is imposed on a foreign corporation by requiring it to defend a suit in a forum located in a state where it has advertised and sold a product whose use gave rise to the cause of action." *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir.1976). Moreover, applying the relevant factors to the facts of the present case, we perceive no unconstitutional unfairness in requiring W.W. Norton to litigate this matter in a forum where it has regularly directed its business. Concomitantly, we hold that the trial court erred in concluding it did not have personal jurisdiction over W.W. Norton.

## II. DOOR CLOSING STATUTE

Appellants assert the trial court erred in determining they were barred from bringing suit against W.W. Norton by South Carolina's door closing statute. We agree.

South Carolina's door closing statute reads:

An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:

(1) By any resident of this State for any cause of action; or

(2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C.Code Ann. § 15–5–150 (1977). Initially, the parties incorrectly frame the issue of the door closing statute as one of subject matter jurisdiction. Although there has been some confusion on this matter, our Supreme Court recently clarified: " § 15–5–150 does not involve subject matter jurisdiction but rather determines the capacity of a party to sue." *Farmer v. Monsanto Corp.*, 353 S.C. 553, 557, 579 S.E.2d 325, 327 (2003) (overruling previous holding otherwise).

Because none of the Appellants are residents of South Carolina, our determination of their capacity to sue W.W. Norton turns on whether their cause of action arose within this State. In support of their contention that the libel action arose in South Carolina, Appellants rely on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In *Keeton*, the United States Supreme Court determined the "tort of libel is generally held to occur wherever the offending material is circulated." *Id.* at 777, 104 S.Ct. 1473. The question in *Keeton* was one of jurisdiction. The issue before us is the applicability of the door closing statute.

In *Murphy v. Owens–Corning Fiberglas Corp.*, 356 S.C. 592, 590 S.E.2d 479 (2003), a latent disease case, the Supreme Court ruled:

In order for Janet to bring her suit in South Carolina, she must meet the Door Closing Statute's requirement that "the cause of action shall have arisen ... within this State." § 15–5–150(2). Janet's complaint unequivocally meets the "cause of action" component of this requirement since she alleges that the legal wrong occurred in South Carolina when she was exposed to asbestos fibers and dust on Father's clothing. *Ophuls & Hill v. Carolina Ice & Fuel Co.*, [160 S.C. 441, 158 S.E. 824 (1931)] *supra.* As the Court

of Appeals held, the critical inquiry here is whether the cause of action arose within the State. . . .

. . . .

In traditional tort settings, we have held that a cause of action arises in this State for purposes of the Door Closing Statute when the plaintiff has the right to bring suit. *See Cornelius v. Atlantic Grey Hound Lines*, 177 S.C. 93, 180 S.E. 791 (1935). In construing the statutory requirement that "the cause of action shall have arisen . . . within in this State," the *Cornelius* court cited with approval to an authority that "stated that 'a cause of action accrues when facts exist which authorize one party to maintain an action against another.' " *Id.* at 96, 180 S.E. at 792 (emphasis supplied). *Cornelius* is consistent with our later decision in *Stephens v. Draffin*, 327 S.C. 1, 488 S.E.2d 307 (1997), where we held "our cases use the verbs 'arise' and 'accrue' interchangeably when discussing the issue of the juncture at which the right to sue came into existence." *Id.* at footnote 4; *see also Tilley v. Pacesetter Corp.*, 355 S.C. 361, 585 S.E.2d 292 (2003).

Were we to apply our traditional view of when a tort cause of action arises or accrues, we must conclude that Janet's cause of action did not arise "within the State" because no injury or damages occurred while she was in South Carolina. Until the exposure to asbestos resulted in injury or damage, Janet's tort cause of action did not accrue. *See e.g., Gray v. Southern Facilities*, 256 S.C. 558, 183 S.E.2d 438 (1971) ("It is basic that a negligent act is not in itself actionable and only becomes such when it results in injury or damage to another").

*Id.* at 598, 590 S.E.2d at 481–82 (footnotes omitted).

Here, the door closing statute, § 15–5–150, does not bar the Appellants from bringing suit against W.W. Norton. In the instant case, there is a continuing publication of *A Glimpse of Hell* in South Carolina upon each sale and upon each dissemination. The sale and republication of the book are events taking place in South Carolina. The location of the actual "printing" of the book is not controlling.

As set forth in the previous section, the factual record reveals with clarity the activities and conduct of W.W. Norton

in South Carolina. Indubitably, the publication of a libel is a basis for a defamation action. The dissemination of the book in South Carolina is a continuing libel in each and every instance. The tort of libel occurs wherever the offending material is circulated. Apodictically, the causes of action as alleged arose in the state of South Carolina.

## CONCLUSION

Based on the foregoing, the trial court's rulings as to Thompson and Meyer are **AFFIRMED.** We **REVERSE** as to W.W. Norton and **REMAND** to the Circuit Court.

HEARN, C.J., and BEATTY, J., concur.