485 S.E.2d 126

**Bennie Lee CARSON, Respondent,**

v.

**Thomas Anthony VANCE, Elect A. Vance, and Naomi A. Graham, Defendants,**

of which

**Naomi A. Graham, Appellant.**

No. 2657.

Court of Appeals of South Carolina.

Submitted Feb. 4, 1997.

Decided April 14, 1997.

Rehearing Denied May 22, 1997.

544

Randall S. Hiller, Greenville, for appellant.

Hal J. Warlick, Easley, for respondent.

HOWARD, Judge:

Bennie Lee Carson (Carson) brought this action to enforce a default judgment obtained in North Carolina against Naomi A. Graham, a South Carolina bail bondsman (Graham), under the Full Faith and Credit Clause of the United States Constitution and the Uniform Enforcement of Foreign Judgments Act, S.C.Code Ann. § 15–35–900 to 960 (Supp.1995). Graham answered, contesting the personal jurisdiction of the North Carolina court. The trial court granted Carson's motion for enforcement of a foreign judgment as a judgment of this state.

On appeal, Graham contends the trial judge erred in considering a runner [1] to be an agent whose tort, committed in the course of apprehension of a fugitive in North Carolina, provided minimum contacts sufficient to establish a basis for asserting jurisdiction over her. We disagree.[2]

---

[1]. A "runner" is the statutory name for a person whose role has traditionally been known as a "bounty hunter"; that is, someone who hunts another person in return for the payment of a bounty if they succeed in finding and returning them. *See* S.C.Code Ann. § 38–53–10(9) (1989).

[2]. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

Graham owns and operates Ace Bonding Company located in Greenville, S.C. One of her clients, James Webster (Webster) failed to appear in court after Graham had posted a $20,000 bond for him. Graham engaged Thomas Anthony Vance (Vance) to locate Webster and bring him back to South Carolina to appear in court. Graham agreed to pay Vance $1,000 if he delivered Webster.

Graham gave Vance the information contained in her file on Webster, which included his last known address in North Carolina. Vance found Webster at this address. In the course of apprehending Webster, Vance shot Carson, an innocent bystander, in the forehead. Vance delivered Webster to Graham and told her of the shooting incident. Graham then paid Vance $1,000 for bringing Webster back to South Carolina.

Carson filed suit against Graham and other individuals in the Rutherford County Superior Court of North Carolina. Graham was personally served with the summons and complaint. She met with her South Carolina attorney and decided not to appear in the North Carolina proceeding. The North Carolina court granted Carson a default judgment against Graham in the amount of $34,552.10 plus interest and costs.

## SCOPE OF REVIEW

█ In an action at law tried without a jury, the trial court's findings of fact will not be disturbed on appeal unless found to be without evidence which reasonably supports the findings of the court. *Cf. Clark v. Key,* 304 S.C. 497, 405 S.E.2d 599 (1991) (finding the appellate court is bound by the trial court's determination that a non-resident defendant is subject to jurisdiction, unless no evidence exists to support the finding).

## DISCUSSION

Graham asserts the trial judge erred in determining the North Carolina court properly exercised jurisdiction over her. She contends her activities were confined to South Carolina, and Vance's actions in North Carolina should not have been

considered by the court because he was operating as an independent contractor. We disagree.

■ The trial court properly concluded the effect and validity of a foreign judgment must be determined by the laws of the state that supplied the judgment. *Hamilton v. Patterson,* 236 S.C. 487, 115 S.E.2d 68 (1960); *Loyd & Ring's Wholesale Nursery, Inc. v. Long & Woodley Landscaping and Garden Center, Inc.,* 315 S.C. 88, 431 S.E.2d 632 (Ct.App.1993).

■ Under North Carolina law, a two prong test is used to determine when a North Carolina court may exercise jurisdiction over a non-resident defendant under the North Carolina long-arm statute.[3] *Tom Togs, Inc. v. Ben Elias Indus. Corp.,* 318 N.C. 361, 348 S.E.2d 782 (1986). First, the court must decide whether the transaction falls within the language of the long-arm statute. *Id.* Graham does not dispute that the activity of Vance meets this criterion. Second, the court must determine whether the transaction violates the due process clause. *Id.*

■ To satisfy the requirements of the due process clause in obtaining personal jurisdiction over the non-resident, "there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking benefits and protections of its laws...." *Better Business Forms, Inc. v. Davis,* 120 N.C.App. 498, 462 S.E.2d 832, 833 (1995). The due process clause requires that maintenance of a lawsuit against a non-resident must not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Strother v. Strother,* 120 N.C.App. 393, 462 S.E.2d 542 (1995). In short, the due process requirement mandates the defendant possess sufficient minimum contacts with the forum state, so that he could reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Miller v. Kite,* 313 N.C. 474, 329 S.E.2d 663 (1985).

---

**3.** N.C.Gen.Stat. § 1–75.4 (1996).

■ Whether minimum contacts are present is not ascertained by using a mechanical formula, but rather, by determining what is reasonable and fair under the circumstances. *Better Business Forms, Inc. v. Davis,* 462 S.E.2d at 833. It depends on the individual facts of each case. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The factors helpful in determining the existence of minimum contacts between the defendant and the forum state so that exercise of personal jurisdiction over the defendant meets the due process requirements include the quantity of contacts, the nature and quality of the contacts, the source and connection of the cause of action with those contacts, the interest of the forum state, and the convenience to the parties. *Estate of Godwin v. Walls,* 118 N.C.App. 341, 455 S.E.2d 473 (1995).

■ The "purposeful availment" requirement ensures that a defendant will not be brought into a jurisdiction solely as a result of random, fortuitous or attenuated contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Neither should a defendant be haled into a forum solely as a result of the unilateral activity of another party. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ The trial court determined Graham had minimum contacts sufficient to allow a North Carolina court to assert personal jurisdiction over her. In so ruling, the court concluded Vance acted as an agent of Graham, and his activities in North Carolina were attributable to Graham. We agree.

Graham initiated the activity in North Carolina by hiring Vance to arrest Webster and bring him back to this state. The only address Graham had for Webster was a North Carolina address, and she should have reasonably expected Vance to travel to North Carolina in search of Webster. Her directions to Vance were to bring Webster back. From these directions she certainly could have anticipated Vance would travel outside of South Carolina to accomplish his job. Upon Vance's return with Webster, Graham paid him his fee. Her contact with North Carolina was most purposeful and in no way attenuated, fortuitous or random.

Graham's argument that Vance operated as an independent contractor over whom she had no control is without merit. The activities of bail bondsmen and runners are statutorily regulated in South Carolina. *See* S.C.Code Ann. § 38–53–10 to 320 (Supp.1996). Bail bondsmen have a statutorily imposed responsibility for the actions of their runners when they receive their license. Section 38–53–80 requires bail bondsmen and their runners to be licensed. A bail bondsman is also required to supply a list of runners every year. S.C.Code Ann. § 38–53–230 (Supp.1996). These statutes specifically provide a bail bondsman *shall* supervise his runner's work and is responsible for the runner's conduct in the bail bond business. S.C.Code Ann. § 38–53–120 (1989). The statutorily imposed duty to supervise the runner is a clear mandate.

■ Under North Carolina law, an employer cannot escape liability for the torts of an employee or agent where the employer owes special legal duties and obligations. The proposition is succinctly stated in the case of *Wright v. Wright*, 229 N.C. 503, 50 S.E.2d 540 (1948) as follows:

It is well-settled law that an employer who, by reason of his calling or the business in which he is engaged, owes special legal duties and obligations to the public or to those with whom there exists some contractual relation cannot shirk or evade such special duties and obligations by committing its performance to another; he is bound absolutely to perform the obligation, and he is liable for a failure to do so in any respect whereby injury results to others, whether such failure results from negligence or from wilful, wanton, or criminal conduct of the employee or agent to whom the duty has been committed. Being bound to do the act or perform the duty, if he does it by another the employer is treated as having done it himself.

*Id.* 50 S.E.2d at 544. This is in accord with our own law on the subject. *See Durkin v. Hansen*, 313 S.C. 343, 437 S.E.2d 550 (Ct.App.1993) (finding one who has a statutorily imposed non-delegable duty cannot escape liability to third persons by engaging an independent contractor to accomplish the work).

Under South Carolina law, a bail bondsman owes special, statutorily imposed duties to supervise the work of his or her runners. Under North Carolina law, Graham could not "shrink or evade" this special duty by committing it to Vance

as an independent contractor. Therefore, the trial court properly considered Vance's actions in North Carolina in determining whether minimum contacts existed to confer jurisdiction over Graham. *See Tom Togs, Inc. v. Ben Elias Indus. Corp.,* 348 S.E.2d at 784 (finding an agent of a clothing distributor had sufficient minimum contacts with North Carolina to establish jurisdiction over the company).

 The Full Faith and Credit Clause provides, in part, that "Full Faith and Credit shall be given in each state to the ... judicial proceedings of every other state." U.S. Const. art. IV, § 1. In essence, the thrust of the clause is that courts of one state must give such force and effect to a foreign judgment as the judgment would receive in its own state. *Purdie v. Smalls,* 293 S.C. 216, 359 S.E.2d 306 (Ct.App.1987). As a result,. "a foreign judgment which is regular on its face generally may not be collaterally attacked." *Bankers Trust Co. v. Braten,* 317 S.C. 547, 551, 455 S.E.2d 199, 200 (Ct.App. 1995). Graham's only attack on the judgment is that of personal jurisdiction. The trial court correctly determined sufficient minimum contacts existed with North Carolina to confer jurisdiction over her. Accordingly, the foreign judgment is entitled to full faith and credit under our laws and the decision of the trial court is

**AFFIRMED.**

HEARN and STILWELL, JJ., concur.