■ PAMELA A. LeCORRE, Respondent, v BIJESSE BELFORD DOLEWSKI & DEMICCO, Defendant and Third-Party Plaintiff-Appellant-Respondent. SHELDON FLANZIG et al., Third-Party Defendants-Respondents-Appellants; AMICA MUTUAL INSURANCE COMPANY, Third-Party Defendant-Respondent. [703 NYS2d 279] —In an action to recover damages for legal malpractice, (1) the defendant third-party plaintiff second third-party plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Suffolk County (Doyle, J.), entered August 25, 1998, as (a) denied those branches of its cross motion which were for summary judgment dismissing the complaint and for summary judgment in the third-party and second third-party actions on the issues of indemnification and contribution, and (b) granted the motion of the second third-party defendant for summary judgment dismissing the second third-party complaint, and (2) the third-party defendants cross-appeal, as limited by their brief, from so much of the same order as denied their cross motion for summary judgment dismissing the third-party complaint.

Ordered that the order is modified, on the law, by deleting the provision thereof granting the motion of the second third-party defendant for summary judgment dismissing the second third-party complaint and substituting therefor a provision denying that motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

In 1988, the plaintiff, Pamela A. LeCorre, retained the law firm of Bijesse Belford Dolewski & DeMicco (hereinafter Bijesse) to commence an action to recover damages for the injuries she allegedly sustained in an automobile accident. Bijesse settled that action for $100,000, which was the limit of the offending driver's liability insurance policy.

At the time of the accident, the plaintiff was covered by an automobile liability insurance policy issued by Amica Mutual Insurance Company (hereinafter Amica). That policy had a rider providing supplemental underinsured motorist insurance to the plaintiff. When LeCorre filed a claim for underinsured motorist benefits with Amica, Amica questioned whether she breached the terms of the policy by settling the personal injury action without its consent. When Bijesse realized that it may have jeopardized LeCorre's recovery for supplemental underinsured motorist benefits, it advised her to retain new counsel.

LeCorre subsequently retained the law firm of Joachim, Flan-

zig & Beasley (hereinafter Joachim), which advised LeCorre that a malpractice action against Bijesse was premature since there was no formal disclaimer of coverage. When Joachim filed a notice of intention to arbitrate LeCorre's underinsurance claim, Amica moved to permanently stay arbitration on the ground that its consent had not been obtained prior to settling the personal injury action, thereby possibly jeopardizing its subrogation rights. That motion was granted.

Thereafter, LeCorre commenced this legal malpractice action against Bijesse, and Bijesse commenced a third-party action against Joachim for indemnification and contribution on the ground that Joachim failed to adequately oppose the stay of arbitration. Bijesse subsequently commenced a second third-party action against Amica for indemnification and contribution on the ground that Amica's fraudulent and negligent misrepresentations in connection with its handling of LeCorre's claim for underinsured motorist benefits and its motion to permanently stay arbitration caused LeCorre's loss of her underinsured motorist benefits. In its bill of particulars, Bijesse also claimed that Amica breached its duty to deal with LeCorre in good faith.

Contrary to the determination of the Supreme Court, Bijesse established the existence of triable issues of fact as to whether Amica implicitly consented to LeCorre's settlement of the underlying personal injury action for the policy limits of the offending driver and whether Amica acted in good faith in its dealings with LeCorre. " 'When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence' " (*Matter of Aetna Cas. & Sur. Co. v Crown,* 181 AD2d 883, 884, quoting *More v New York Bowery Fire Ins. Co.,* 130 NY 537, 545). Furthermore, an insurer has an implied duty to act in good faith in dealing with its insured (*see, Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae,* 243 AD2d 168).

In the matter at bar, at his deposition, Amica's regional vice-president, James M. Lynch, read from a letter he wrote dated January 12, 1989, to one of Amica's claim representatives in which he referred to possible underinsurance coverage exposure pursuant to Amica's policy issued to LeCorre. It also appears from his testimony that in December 1988 and January 1989, at least one of Amica's claims representatives handling the plaintiff's additional Personal Injury Protection claim was aware that there was underinsurance coverage, that LeCorre's injuries were serious, and that the limits of the policy of the

other driver were significantly less than Amica's. Thus, in December 1988 and January 1989, Amica was aware that such a claim might be made pursuant to the underinsurance provision of the policy. Yet, one month later, in February 1989, Amica sent only a limited agreement dealing with subrogation regarding the additional "Personal Injury Protection" provision of LeCorre's insurance policy. That agreement, which was signed by LeCorre on February 24, 1989, before the execution of the general release, made no mention of any subrogation issue relating to LeCorre's potential claim for underinsured motorist benefits.

The policy language of the underinsurance rider, as opposed to that of the uninsured motorist protection provision, did not require Amica's written consent prior to settling a claim. Thus, there is a question of fact as to whether Amica's silence on the issue of subrogation regarding the underinsurance claim could have been viewed as consenting to a settlement for the policy limits of the other driver's vehicle, as well as whether Amica was acting in good faith regarding potential claims by LeCorre.

The Supreme Court properly denied those branches of Bijesse's cross motion which were for summary judgment dismissing the complaint and for summary judgment in the second third-party actions on the issues of indemnification and contribution (*see generally, Alvarez v Prospect Hosp.*, 68 NY2d 320). Michael DeMicco, who was the attorney handling the LeCorre matter for Bijesse at the time this matter was settled, admitted that before the delivery of the general release executed by LeCorre, he was aware that Amica had a right of subrogation in this matter. Thus, the fact that the limited subrogation agreement was signed before the execution of the general release raises at least two factual questions concerning whether Bijesse was, or should have been, aware of the subrogation issue as to LeCorre's underinsured motorist claim, and whether it was negligent in failing to obtain a consent from Amica to the settlement of the underlying personal injury action prior to executing the general release.

The parties' remaining contentions are without merit. O'Brien, J. P., Ritter, S. Miller and Florio, JJ., concur.