686 S.E.2d 699

**Brandon LEGGETT, Respondent**

v.

**Bryan J. SMITH, Respondent,**

**Kenneth Smith, Mary Elizabeth Hall Smith and New York Central Mutual Fire Insurance Company, Defendants,**

**and**

**New York Mutual Fire Insurance Company, Appellant.**

No. 4630.

Court of Appeals of South Carolina.

Heard Sept. 1, 2009.

Decided Nov. 10, 2009.

64

68

Charles V. Leonard, of Myrtle Beach, Jeffrey D. Wait, of Saratoga Springs, Steven P. Curvin, of Buffalo, for Appellant.

Douglas Charles Baxter, of Myrtle Beach, Gene McCain Connell, Jr., of Surfside Beach, for Respondent.

HUFF, J.

In this appeal from a declaratory judgment action, New York Central Mutual Fire Insurance Company (New York Central) appeals the trial court's ruling that South Carolina had personal jurisdiction over New York Central and New York Central provided coverage for the accident at issue. We affirm.

## FACTS/PROCEDURAL HISTORY

On April 23, 2004, Bryan Smith was involved in an accident in which he failed to yield the right-of-way to a motorcycle driven by Brandon Leggett.[1] Smith was driving a 1996 Ford Escort, which he had recently titled in his name. Until that time, the Escort had been owned by his father, Kenneth P. Smith (Father). The car had been insured under a policy with New York Central in which Father and Smith's mother, Mary Elizabeth Hall Smith, (Mother) were the named insureds. Smith was listed as a "covered driver" under this policy.

New York Central is a New York corporation licensed to engage in the insurance business in New York. It is not licensed to do business or to sell insurance in South Carolina. Smith's parents are New York residents. Smith moved from New York to Myrtle Beach, South Carolina in 1999. At that time he drove an Audi owned and insured by his parents. In 2001, Father purchased the Ford Escort and provided it for Smith to use while he attended college at Coastal Carolina University. Before starting college, Smith established legal residency in South Carolina. He turned in his New York driver's license and acquired a South Carolina license in March of 2001. Mother testified that she informed her New York Central agent, the Mang Agency, Smith was using the car while he attended college in South Carolina.

Father signed over title to Smith in January of 2004 with the intent Smith would have ownership of the vehicle once it was titled and insured in South Carolina. On April 5, 2004, Smith went to the South Carolina Department of Motor Vehicles (DMV) to transfer the title and register the vehicle in his name. At the request of the DMV employee, he presented the New York Central insurance card and told her both of his parents' names were on the card. He listed the Mang Insurance Company on the DMV application as the insurance agency. According to Smith, the DMV employee told him he had thirty days to change the insurance to South Carolina. Smith called several insurance agents before choosing State Farm. He called a State Farm agent on April 12 and was told he needed a copy of the declaration page from the New York Central policy. That same day Smith called the Mang Agency

---

1. Smith was charged with driving under the influence.

and requested a faxed copy of the policy. Smith testified he told the agent he had transferred the title to his name and that he needed the document in order to acquire insurance within the thirty-day time frame. Although Smith received the fax from the Mang Agency, he failed to acquire insurance from State Farm or any other agency before the accident. New York Central sent Smith's parents notice that effective May 4, 2004, eleven days after the accident, the Ford Escort was deleted from the policy and amended the covered drivers on the policy to remove Smith due to his being "out of household." In addition, New York Central sent notice it was cancelling the policy effective May 21, 2004. New York Central refunded some of the premiums paid by Smith's parents for coverage for Smith, but it refused to refund any premiums paid through May 4, 2004. It subsequently reinstated the policy as to Smith's parents' remaining vehicle.

After the accident, New York Central informed Leggett's counsel of the limits of the policy. It hired South Carolina insurance adjusters to appraise the damage to Leggett's motorcycle and paid Leggett $5,636.65 for the motorcycle on June 7, 2004. On June 9, 2004, New York Central sent Leggett's counsel a letter denying liability coverage for the claim.

Leggett filed this action asserting a negligence claim against Smith and his parents and requesting a declaratory judgment that New York Central provided coverage for the accident. Smith filed a cross-claim requesting the court determine he was in fact an insured under the New York Central policy. New York Central answered denying coverage and asserting the state of South Carolina lacked jurisdiction over it. The trial court stayed the negligence claims against the Smiths until the declaratory judgment action was heard. After a hearing on the declaratory judgment action, the trial court determined South Carolina had personal jurisdiction over New York Central. Applying New York law,[2] the court held New York Central was obligated to provide coverage for the accident. The court subsequently denied New York Central's Rule 59, SCRCP, motion. This appeal followed.

---

2. Both parties assert New York law applies to this case.

## STANDARD OF REVIEW

■■■■ "A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). An action to determine coverage under an insurance policy is an action at law. *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 543, 677 S.E.2d 574, 578 (2009). On appeal of an action at law tried without a jury, the findings of fact of the trial court will not be disturbed unless found to be without evidence which reasonably supports the trial court's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

A. Personal jurisdiction

New York Central argues the trial court erred in determining South Carolina had personal jurisdiction over it. We disagree.

■■■■ "The question of personal jurisdiction over a nonresident defendant is one which must be resolved upon the facts of each particular case." *State v. NV Sumatra Tobacco Trading, Co.*, 379 S.C. 81, 88, 666 S.E.2d 218, 221 (2008). The circuit court's decision should be affirmed unless unsupported by the evidence or influenced by an error of law. *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005).

■■■■ "Personal jurisdiction is exercised as 'general jurisdiction' or 'specific jurisdiction.'" *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007). The court acquires specific jurisdiction over a cause of action arising from a defendant's contacts with the state through the long arm statute. S.C.Code Ann. § 36–2–803 (Supp.2008); *Cockrell*, 363 S.C. at 491, 611 S.E.2d at 508. "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell*, 363 S.C. at 491, 611 S.E.2d at 508.

 "General jurisdiction attaches even when the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts are both 'continuous and systematic.'" *Id.* at 495, 611 S.E.2d at 510 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

These contacts must be "so substantial and of such a nature as to justify suit against [the respondents] on causes of action arising from dealings entirely different from those activities." *International Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Furthermore, the defendant's contacts with the forum must satisfy the due process clause. *Federal Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 660 (4th Cir.1989).

*Cockrell,* 363 S.C. at 495, 611 S.E.2d at 510.

 Due process requires minimum contacts exist between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* at 491, 611 S.E.2d at 508. "Further, the due process requirement mandates the defendant possess sufficient minimum contacts with the forum state such that he could reasonably anticipate being haled into court there." *Power Prods. & Servs. Co. v. Kozma,* 379 S.C. 423, 431–32, 665 S.E.2d 660, 665 (Ct.App.2008). In determining whether such minimum contacts exist, courts apply a two-pronged analysis. *S. Plastics Co. v. S. Commerce Bank,* 310 S.C. 256, 260, 423 S.E.2d 128, 130–131 (1992). The court must (1) find that the defendant has the requisite minimum contacts with the forum, without which, the court does not have the "power" to adjudicate the action and (2) find the exercise of jurisdiction is reasonable or fair. *Id.* at 260, 423 S.E.2d at 131. "If either prong fails, the exercise of personal jurisdiction over the defendant fails to comport with the requirements of due process." *Id.*

 Under the power prong, a minimum contacts analysis requires a court to find the defendant directed its activities to residents of South Carolina and the cause of action arises out of or relates to those activities. *Moosally v. W.W.*

*Norton & Co.,* 358 S.C. 320, 331–32, 594 S.E.2d 878, 884 (Ct.App.2004).

> It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.

*Moosally,* 358 S.C. at 332, 594 S.E.2d at 884 (citations omitted). Neither should a defendant be haled into a forum solely as a result of the unilateral activity of another party. *Carson v. Vance,* 326 S.C. 543, 549, 485 S.E.2d 126, 129 (Ct.App.1997).

The Fourth Circuit Court of Appeals ruled that the Eastern District Court of Virginia had personal jurisdiction over an Illinois insurer when the policy included a territory-of-coverage clause in which the insurer contracted to provide coverage for accidents and losses that occurred within the policy territory, which included all of the United States of America. *Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282 (4th Cir.1987). The Fourth Circuit found there was no doubt the insurer could foresee being haled into court in Virginia because insurance, by its very nature, often necessitates litigation and an automobile policy is typically sued upon where an accident takes place. *Id.* at 286. The court stated the insurer's expectation of being haled into court was an express feature of its policy. *Id.* It explained, "[p]resumably, [the insurer] offers this type of broad coverage to induce customers to buy its policies and pay higher premiums for them. The benefits thereby accruing to [the insurer] are neither fortuitous nor incidental." *Id.* at 287. It noted an insurance company has the ability to exclude a state in which it wanted to avoid litigation from the policy territory. *Id.*[3]

---

3. This court found South Carolina had personal jurisdiction over an out-of-state insurer where the appellant took no exception to the trial court's finding that the insured vehicle would "travel in a carnival over the eastern portion of this country [and that] [the insurer] should certainly be put on notice that vehicles traveling in a carnival would be very likely to be involved in accidents in states in which the carnival travels such as South Carolina." *Parker v. Fireman's Ins. Co. of Newark, N.J.,* 297 S.C. 166, 169, 375 S.E.2d 325, 326 (Ct.App.1988). It

Other jurisdictions have also held a territory-of-coverage provision that includes the forum state, coupled with the insured event occurring in the forum state, is sufficient to establish minimum contacts. *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 456 (6th Cir.1993) ("The fact that [insurer] chose to provide coverage for all fifty states . . . constitutes purposeful availment of any individual state's forum."); *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 791 (8th Cir.2005) (holding insurance policy's territory of coverage clause established sufficient contact between insurer and Arkansas to satisfy the strictures of the Due Process Clause); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir.1990) (finding minimum contacts where insurer had purposefully availed itself of the forum state by agreeing to defend its insured throughout the United States); *McGow v. McCurry*, 412 F.3d 1207, 1215 (11th Cir.2005) (noting that by including Georgia in territory of coverage, insurer purposefully sought to provide coverage for accidents occurring in Georgia and reasonably should have foreseen being haled into court in Georgia); *State Farm Mut. Auto. Ins. v. Tenn. Farmers Mut. Ins. Co.*, 645 N.W.2d 169, 174 (Minn.Ct.App.2002) (holding the out-of-state insurer could reasonably anticipate being haled into Minnesota courts, by virtue of its policy provisions and the inherently mobile nature of the motor vehicle); *see also, TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1290 (10th Cir.2007) (noting that with territory-of-coverage clause, insurers purposefully avail themselves of the privilege of conducting business in the forum state by affirmatively choosing to include the forum state in the territory of coverage).

■■■ The policy in this case includes a territory-of-coverage clause limiting coverage to the United States, its territories or

held the plaintiff's declaratory judgment action arose from the insurer's contracting to insure the insured's automobile while it moved through the eastern United States, including South Carolina, and from the insurers entry into an insurance contract to be performed at least in part in states along the eastern seaboard, including South Carolina. *Id.* Citing to *Rossman*, the court noted it could not determine if the policy expressly defined its coverage to include South Carolina because the policy was not in the record on appeal and the insurer as the appellant bore the burden of providing the court with an adequate record on appeal as well as showing the trial court erred. *Id.* at 169 n. 1, 375 S.E.2d at 326 n. 1.

possessions, Puerto Rico, and Canada. It also includes a provision specifically addressing out-of-state coverage. In addition, New York Central was on notice the vehicle it was insuring was being kept in South Carolina and Smith was living in South Carolina. On cross-examination by Leggett's counsel, Mother testified that when she went to the Mang Agency to ensure Smith would still be covered by the policy, she told the agent that Smith was taking the Ford Escort with him to South Carolina. We find that by virtue of the policy provisions, as well as New York Central's notice that it was insuring a vehicle kept in South Carolina, New York Central could reasonably expect to be haled into court in South Carolina. Thus, the "power prong" is met.

■ We must next examine the "fairness prong."

In order to determine whether the exercise of jurisdiction over a foreign defendant meets the fairness prong, the court must consider the following: (1) the duration of the activity of the nonresident within the state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction. *Cockrell*, 363 S.C. at 492, 611 S.E.2d at 508.

*Power Prods. and Servs. Co.*, 379 S.C. at 432, 665 S.E.2d at 665.

■ New York Central had been on notice for several years the vehicle had been garaged in South Carolina and was aware Smith was living in the state at the time. As to the convenience of the parties, all of the witnesses to the declaratory judgment action, including Smith who had returned to New York to live with his parents, were residing in New York at the time of the hearing. In addition, New York law applied. However, Leggett, the injured party, was a South Carolina resident with a South Carolina attorney. As far as South Carolina's interests, Smith and Leggett, who were requesting the court determine coverage was available for the accident, were South Carolina citizens. Thus, South Carolina has a substantial interest in exercising jurisdiction. *See Rossman*, 832 F.2d at 287 (holding Virginia has a substantial interest in providing relief for its citizens when insurance

companies refuse to pay claims). The *Rossman* court explained, "These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant state in order to hold it legally accountable." *Id.* (quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

We conclude the trial court's assertion of jurisdiction over New York Central comported with traditional notions of fair play and substantial justice. Accordingly, as both the power prong and the fairness prong have been met, we find the trial court did not err in holding it had personal jurisdiction over New York Central.[4]

B. Coverage on Ford Escort

New York Central argues the trial court erred in finding coverage on the Ford Escort. We disagree.

New York Central first contends the coverage on the Ford Escort terminated upon transfer of title. Generally, an insurer's coverage of an insured automobile terminates upon the transfer of title by its insured to another. However, coverage may continue if the insurer is notified and consents to continued coverage. *Allstate Ins. Co. v. Santos*, 250 A.D.2d 634, 673 N.Y.S.2d 694, 694 (1998). "When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence." *LeCorre v. Bijesse Belford Dolewski & DeMicco*, 269 A.D.2d 569, 703 N.Y.S.2d 279, 281 (2000) (internal quotations omitted). "Furthermore, an insurer has an implied duty to act in good faith in dealing with its insured." *Id.* In *LeCorre*, the court held a question of fact existed as to whether the insurer's silence on the issue of subrogation regarding the underinsurance claim could have been viewed as consenting to a settlement for the policy limits of the other driver's vehicle, as well as whether the insurer

---

4. Although the circuit court held it had personal jurisdiction over New York Central for different reasons, this court may affirm for any ground appearing in the record. *See I'On v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (noting an appellate court can affirm for any reason appearing in the record).

was acting in good faith regarding potential claims by insured. *Id.*

In the present case, the trial court held New York Central consented to the transfer because it failed to cancel the policy after Smith informed the Mang Agency that title had been transferred to him. Smith testified when he called the Mang Agency to inform it of the transfer and have the policy faxed to him, he specifically told the agent with whom he spoke he believed he had thirty days to acquire new insurance for the vehicle. No one from the Mang Agency indicated to him he did not have continued coverage or warned him not to drive the car. New York Central did not actually cancel the policy on the Ford Escort until May 4, 2004, eleven days after the accident. It only credited Smith's parents for the premium charged after that date. Thus, although it now claims coverage terminated before the accident, it retained the premiums charged though the date of the accident and eleven days afterwards.

We find New York Central's failure to formally cancel the policy as to the Ford Escort after Smith informed it of the transfer of ownership, along with its silence after Smith expressed his belief that he had continued coverage for thirty days to find new insurance, supports the trial court's determination that New York Central consented to the continued coverage. Accordingly, we find no error in the trial court's decision on this issue.

 The trial court also found New York Central was estopped from denying coverage due to the transfer of title. Equitable estoppel is the "doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had." *Besicorp Group Inc. v. Enowitz,* 235 A.D.2d 761, 652 N.Y.S.2d 366, 369 (1997). Under this doctrine, a party is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. *Id.*

Here, as stated above, Smith expressed his belief to New York Central's agent he had continuing coverage for thirty days after the transfer of title to obtain new insurance in

South Carolina. The agent failed to correct this mistaken belief. Smith testified that if he had known he did not have coverage, he would not have driven the vehicle.

We hold the record supports the trial court's finding that due to New York Central's agent's silence when Smith informed him of the title transfer, New York Central is estopped from asserting coverage terminated upon transfer. Thus, we find no error in the trial court's ruling.

C. Coverage for Smith

New York Central argues Smith was not entitled to liability coverage because he was not a household resident at the time of the accident and the car was not principally garaged in New York. We disagree.

Smith was listed as a "covered driver" on the policy. This term was not defined and the rights of a covered driver were not set forth in the policy. The New York Appellate Division found when a son was listed as a "named driver" along with his parents and the policy failed to define the term "named driver" or to exclude it from coverage, an ambiguity arose, which must be construed in favor of the insured. *Kennedy v. Valley Forge Ins. Co.*, 203 A.D.2d 930, 612 N.Y.S.2d 712, 713 (1994). The court noted that if the insurers had wished to exclude a "named driver" from coverage, they must have done so in clear and unmistakable language. *Id.* Because the insurers failed to do so, the court concluded the son must be afforded the same coverage as his parents. Thus, the son as a "named driver" fell within the same exception to an exclusion for "named insureds." *Id.*

There is no indication in the present policy the residency requirement applied to "covered drivers." Furthermore, we hold the record supports the trial court's ruling New York Central waived the residency requirement.

The policy stated it would "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." It defined the term "insured" as "You and any 'family member' for the ownership maintenance or use of any auto or 'trailer'" and "[a]ny person using 'your covered auto.'" It defined "family member" as "a

person related to you by blood, marriage or adoption who is a resident of your household."

 Waiver is a voluntary and intentional relinquishment of a known right. *Albert J. Schiff Assocs. v. Flack,* 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84, 87 (1980). The court explained:

"[w]aiver evolved because of courts' disfavor of forfeitures of the insured's coverage which would otherwise result where an insured breached a policy condition, as for instance, failure to give timely notice of a loss or failure to co-operate with the insured. To defeat the forfeiture, courts find waiver where there is direct or circumstantial proof that the insurer intended to abandon the defense."

*Id.* (citations omitted).

Mother testified when Smith moved to South Carolina, she immediately told their insurance agent at the Mang Agency about the move and that Smith would be taking the Ford Escort with him. She stated their insurance premiums were higher based upon the fact Smith was listed as a covered driver. No one from New York Central ever informed her Smith was no longer a covered driver before the accident. In addition, on March 16, 2004, New York Central received actual notice Smith had surrendered his New York driver's license on March 8, 2001. Although Timothy Trueworthy, Vice President of Claims Division with New York Central, testified the company would have investigated whether Smith's coverage should continue, there is no evidence it ever took any action in this regard. Thus, although New York Central had actual notice Smith was a South Carolina resident for over a month before the accident, it took no action to remove Smith from the policy.

We hold the record contains evidence to support the trial court's finding that while New York Central knew about Smith's change of residency, it continued to accept premium payments to include him as a covered driver and thus waived the household residency requirement. Similarly, we find New York Central continued to accept premiums on the Ford Escort even though it had notice that the vehicle was kept in South Carolina and therefore waived any condition that the vehicle be principally garaged in New York.

### D. Knowledge of terms of policy

██ New York Central argues the Smiths are bound by the terms of the insurance policy because they are conclusively presumed to have knowledge of its contents. The trial court did not address this issue and New York Central failed to raise it in its post-trial motion. Accordingly, this issue is not properly before the court. *See Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding where a trial court does not explicitly rule on an argument raised, and appellant makes no Rule 59(e), SCRCP, motion to obtain a ruling, the appellate court may not address the issue); *Floyd v. Floyd,* 365 S.C. 56, 73, 615 S.E.2d 465, 474 (Ct.App.2005) (stating when a trial judge makes a general ruling on an issue, but does not address the specific argument raised by the appellant and the appellant fails to raise the issue in a Rule 59(e) motion, the appellate court cannot consider the argument on appeal).

## CONCLUSION

We hold the evidence supports the trial court's finding that New York Central waived the household residency requirement through its continued acceptance of premium payments and inclusion of Smith as a covered driver despite knowledge of his change in residency. Similarly, through continued acceptance of premiums with the knowledge the Ford Escort was being kept in South Carolina, New York Central waived any condition that the vehicle be principally garaged in New York. For the above stated reasons, the decision of the trial court is

**AFFIRMED.**[5]

THOMAS, and PIEPER, JJ. concur.

---

5. We need not address New York Central's remaining issues. *See Hagood v. Sommerville,* 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (stating the appellate court need not address additional issues when resolution of prior issue is dispositive).