783 S.E.2d 839

**HIDRIA, USA, INC., Appellant,**

v.

**DELO, d.d., d/b/a Slovenske Novice, Respondent.**

**Appellate Case No. 2013–000690.**
**No. 5394.**

Court of Appeals of South Carolina.

Heard Jan. 7, 2015.
Decided March 23, 2016.

534

Phillip E. Reeves and Nicholas Andrew Farr, both of Gallivan, White & Boyd, PA, of Greenville, for appellant.

Wallace K. Lightsey and Meliah Bowers Jefferson, both of Wyche Law Firm, of Greenville, for respondent.

MCDONALD, J.

Appellant Hidria USA, Inc. (Hidria) appeals the circuit court's order of dismissal, arguing the court erred in finding it lacked personal jurisdiction over Respondent Delo, d.d., d/b/a Slovenske Novice (Delo). Hidria argues it produced the evidence necessary to support the court's exercise of personal jurisdiction based on Delo's sufficient contacts with South Carolina. Hidria asserts in the alternative that, even if Delo lacked sufficient minimum contacts with South Carolina, the circuit court erred in dismissing this case because Delo subjected itself to personal jurisdiction by intentionally targeting Hidria in South Carolina. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Hidria is a Delaware corporation with its headquarters and principal place of business located in Greenville County, South Carolina. This company, which provides business solutions for multiple industries, regularly transacts business in Greenville and employs persons there.

Delo, a corporation organized and existing under the laws of the Republic of Slovenia, is the publisher of *Slovenske Novice*, a daily newspaper printed and distributed primarily in Slovenia. Delo publishes a print and online version of the newspaper, and *Slovenske Novice* articles are available to anyone accessing the website. Both the print version and the online version are published only in Slovene, a language spoken primarily in Slovenia. Delo does not produce English translations of its publications.

This case arises from two articles published in *Slovenske Novice*—one on December 11, 2011, and one on April 23, 2012—discussing the "luxurious" lifestyle and business dealings of Slovenian businessman Edvard Svetlik. Hidria USA shares common ownership with Hidria, d.d., a Slovenian business entity controlled by Svetlik and his family. As Delo admits, the articles discuss Svetlik's "accumulation and distribution of wealth throughout his family in Slovenia, other European countries, and the United States of America, and compares the Svetlik family's luxurious lifestyle to that of their employees in Slovenia." The articles also reference Svetlik's various business interests, including Hidria.

While Delo denies that its reporter traveled to South Carolina to collect information for the articles, the Delo reporter admitted to corresponding with Hidria employee Darjan Lapanje in gathering information for the April 2012 article.[1] Additionally, the reporter gathered information from several websites maintained by South Carolina governmental entities.

In its March 7, 2012 complaint, Hidria alleged that South Carolina residents read the articles on *Slovenske Novice*'s website. According to Hidria, Delo "maliciously published the article knowing that it contained falsities concerning the per-

---

1. Delo provided these emails in its answers to Hidria's first set of interrogatories; however, they were provided in Slovene.

sons and entities targeted therein." Hidria further contended that "[a]s a direct and proximate consequence of [Delo's] publication of the article, the business reputation of Hidria USA has been injured in that because of the irreparable harm to its image and brand . . ., it has been damaged in its ability to sell and market its products." It is Hidria's position that *Slovenske Novice* targeted South Carolina citizens as potential subscribers by publishing articles with content concerning the State of South Carolina.

Delo—through the affidavit of its attorney, Nada Jakopec—admitted it cannot confirm the exact number of South Carolinians who accessed and read the articles at issue. Delo further admitted that it is possible that up to seven South Carolinians viewed the December 2011 article and up to three South Carolinians viewed the April 2012 article. Hidria General Manager Domen Bočkor stated by affidavit that the two articles were "read by all of [Hidria's] employees located in South Carolina" and "by many employees of [Hidria's] customers in South Carolina which directly damaged [Hidria's] relationships with several customers."

Delo filed a motion to dismiss Hidria's complaint for lack of personal jurisdiction on June 15, 2012. Hidria filed an amended complaint on July 5, 2012, and Delo again moved to dismiss on July 23, 2012. While Delo's motion to dismiss was pending, Hidria served jurisdictional discovery on Delo. Delo failed to answer the discovery and, on August 10, 2012, Hidria moved to compel Delo to respond to the discovery requests or, in the alternative, to allow the parties to conduct jurisdictional discovery.

The circuit court heard the two pending motions—Delo's motion to dismiss and Hidria's motion to compel—on August 16, 2012. After hearing arguments and considering Hidria's discovery requests, the circuit court issued an order on October 15, 2012, permitting the parties to conduct discovery on the jurisdictional issues raised in Delo's motion to dismiss. The circuit court held its ruling on the motion to dismiss in abeyance pending completion of the jurisdictional discovery. Delo filed its answers to Hidria's discovery requests under seal. The circuit court subsequently granted Delo's motion to

dismiss for lack of personal jurisdiction by order dated January 10, 2013.

On January 18, 2013, Hidria moved to reconsider. The circuit court denied Hidria's motion to reconsider on February 27, 2013. This appeal followed.

## STANDARD OF REVIEW

The question of whether a court may exercise personal jurisdiction over a nonresident defendant is one that must be resolved upon the facts of each particular case. *Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 327, 594 S.E.2d 878, 882 (Ct.App.2004). "The decision of the trial court should be affirmed unless unsupported by the evidence or influenced by an error of law." *Id.*

"It is well-settled that the party seeking to invoke personal jurisdiction over a nonresident defendant via our long-arm statute bears the burden of proving the existence of personal jurisdiction." *Id.* "At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits." *Id.* at 328, 594 S.E.2d at 882. "When a motion to dismiss attacks the allegations of the complaint on the issue of jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction." *Sullivan v. Hawker Beechcraft Corp.*, 397 S.C. 143, 150, 723 S.E.2d 835, 839 (Ct.App.2012) (quoting *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007)).

## LAW/ANALYSIS

### 1. Requisite Minimum Contacts

Hidria argues the circuit court failed to apply the proper test in considering the question of personal jurisdiction. "Personal jurisdiction is exercised as 'general jurisdiction' or 'specific jurisdiction.'" *Coggeshall*, 376 S.C. at 16, 655 S.E.2d at 478. In this case, Hidria concedes that South Carolina's courts do not have general jurisdiction over Delo; thus, our analysis focuses on specific jurisdiction.

"Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifi-

cally from a defendant's contacts with the forum; specific jurisdiction is determined under [section 36–2–803 of the South Carolina Code (2003) ]." *Id.* (citing *Cockrell v. Hillerich & Bradsby Co.,* 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005)). "The determination of whether a court may exercise personal jurisdiction over a nonresident involves a two-step analysis." *Sullivan,* 397 S.C. at 150, 723 S.E.2d at 839 (quoting *Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.,* 303 S.C. 502, 505, 402 S.E.2d 177, 179 (1991)). "The trial court must (1) determine whether the South Carolina long-arm statute applies and (2) whether the nonresident's contacts in South Carolina are sufficient to satisfy due process." *Id.* (citing *Power Prods. & Servs. Co. v. Kozma,* 379 S.C. 423, 431, 665 S.E.2d 660, 664 (Ct.App.2008)).

South Carolina's long-arm statute provides, in relevant part, the following:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

(1) transacting any business in this State;

. . . .

(3) commission of a tortious act in whole or in part in this State;

(4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State. . . .

S.C.Code Ann. § 36–2–803(A) (Supp.2015).

Courts have construed South Carolina's long-arm statute, which affords broad power to exercise personal jurisdiction over causes of action arising from tortious acts and injuries in South Carolina, to extend to the outer limits of the due process clause. *See, e.g., Meyer v. Paschal,* 330 S.C. 175, 181, 498 S.E.2d 635, 638 (1998); *Hammond v. Cummins Engine Co.,* 287 S.C. 200, 203, 336 S.E.2d 867, 868 (1985); *see also Cozi Invs. v. Schneider,* 272 S.C. 354, 358, 252 S.E.2d 116, 118 (1979) (stating "South Carolina's Long–Arm Statute has been construed on several occasions as a grant of jurisdiction as

broad as constitutionally permissible. Hence, the parameters of [the statute] are restricted only by due process limitations." (citations omitted)).

■■■■ "Because we treat our long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction in this case would violate the strictures of due process." *Moosally*, 358 S.C. at 329, 594 S.E.2d at 883. "Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 330, 594 S.E.2d at 883 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Aviation Assocs.*, 303 S.C. at 507, 402 S.E.2d at 180).

■■■■ The determination of whether the requirements of due process are satisfied involves a two-prong analysis of (1) the "power" prong, under which minimum contacts grant a court the "power" to adjudicate the action; and (2) the "fairness" prong, which requires the exercise of jurisdiction to be "reasonable" or "fair." *S. Plastics Co. v. S. Commerce Bank*, 310 S.C. 256, 260, 423 S.E.2d 128, 131 (1992). The plaintiff bears the burden of satisfying both tests. *Id.* at 259, 423 S.E.2d at 130. "If either prong fails, the exercise of personal jurisdiction over the [nonresident] defendant fails to comport with the requirements of due process." *Id.* at 260, 423 S.E.2d at 131.

In *Moosally*, this court explained the analysis as follows:

Under the power prong, a minimum contacts analysis requires a court to find that the defendant directed its activities to residents of South Carolina and that the cause of action arises out of or relates to those activities. Without minimum contacts, the court does not have the "power" to adjudicate the action. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Whether the constitu-

tional requirement of minimum contacts has been met depends on the facts of each case.

Under the fairness prong, we examine such factors as the burden on the defendant, the extent of the plaintiff's interest, South Carolina's interest, efficiency of adjudication, and the several states' interest in substantive social policies.

358 S.C. at 331–32, 594 S.E.2d at 884–85 (citations omitted).

In support of its argument, Hidria claims the circuit court overlooked evidence of Delo's contacts with South Carolina and erred in examining only whether Delo "transacted business" here, instead of considering whether Delo had the requisite minimum contacts. We disagree.

In its order of dismissal, the circuit court held "South Carolina's long-arm statute does not apply to this case because [Delo] has not transacted any business in this State" that "would subject it to the long-arm statute." The circuit court supported its conclusion that Delo did not "purposefully avail" itself of the laws of this State by finding (1) Delo has not conducted any business in South Carolina; (2) Delo has no subscribers in South Carolina; (3) Delo does not solicit advertisers in South Carolina; (4) Delo has no bank accounts or registered agents in South Carolina; and (5) Delo has no record of ever sending agents or employees to South Carolina to collect information for any publication.

While residents of South Carolina could access the articles on Delo's website, Delo does not have any online subscribers in South Carolina, nor is there evidence of Delo directing any online business activity towards this State. Further, Delo does not publish its articles in the English language in any manner, whether in hard copy or online. Hence, we agree with the circuit court that the mere accessibility of the articles via the unilateral use of the Internet by someone located in South Carolina does not satisfy the traditional minimum contacts analysis under the facts of this case.

Comparably, *Moosally* involved a defamation claim brought against a source, the author, and the publisher of a book of national interest that was widely distributed in South Carolina. 358 S.C. at 320, 594 S.E.2d at 878. There, this court considered whether to uphold the circuit court's dismissal of

the defendants, all nonresidents, for lack of personal jurisdiction. *See id.* at 328, 594 S.E.2d at 882. The court found that the source, who had given information to the author about the subject matter, did not "purposefully avail" himself of the privilege of doing business in South Carolina; thus, South Carolina courts could not exercise jurisdiction over him. *Id.* at 333, 594 S.E.2d at 885.

With regard to the author of the book, the *Moosally* court also determined that South Carolina had no jurisdiction, even though the author wrote a book on a topic of national interest. The court explained its reasoning:

[A]n individual does not "purposefully avail" himself of the laws of this State merely by virtue of having authored a single literary work on a topic of national interest.

Because the subject matter of [the author's] manuscript was an event of national interest that occurred outside South Carolina, it does not follow that his activity of pressing pen to paper was directed to the residents of South Carolina. The fruits of his labor—be it in literary or in cinematic form—arrived in South Carolina not through his efforts, but through the efforts of others, and therefore cannot serve as the basis for jurisdiction.

*Id.* at 334, 594 S.E.2d at 885.

The *Moosally* court did hold, however, that South Carolina could exercise personal jurisdiction over the publisher of the book, W.W. Norton. *Id.* at 334, 594 S.E.2d at 886. In support of their argument, the *Moosally* appellants cited *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), in which the United States Supreme Court applied the minimum contacts analysis after a New York resident brought a libel suit in New Hampshire against a nationally circulated magazine publisher incorporated in Ohio. The Court held the sale of 10,000 to 15,000 copies of the magazine in New Hampshire each month was sufficient to support the assertion of jurisdiction in a libel action based on the magazine's contents. Further, the Court noted, "regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Keeton*, 465 U.S. at 774, 104 S.Ct. 1473; *see also Burger King*, 471 U.S. at 473, 105 S.Ct. 2174 ("[A] publisher

who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story.").

The *Moosally* court emphasized that, like the publisher in *Keeton*, W.W. Norton had "continually endeavored to exploit the South Carolina market." *Moosally*, 358 S.C. at 335, 594 S.E.2d at 886.

> W.W. Norton produced discovery documents and responses including a list of approximately 315 bookstores in South Carolina in which W.W. Norton sold books. Many of these books are sold to educational institutions in South Carolina. . . .
>
> W.W. Norton has published 7,852 titles in the past twenty years and admits "[i]t is fair to assume that at least one copy of each title was distributed in South Carolina." A number of W.W. Norton's employees cover South Carolina as sales representatives and visit college campuses for the purpose of selling books. W.W. Norton has had small book fairs in South Carolina, a media demo, and has hosted a breakfast for the English Department at the College of Charleston. That the Charleston County Public Library system alone owns 2,900 titles published by W.W. Norton is a testament to the publishing company's commercial presence within South Carolina.

*Id.* at 335–36, 594 S.E.2d at 886. As W.W. Norton directed its activities toward citizens of South Carolina, it could "reasonably anticipate being haled into court here in a libel action based on the contents of one of its publications." *Id.* at 336, 594 S.E.2d at 886. The court concluded, "W.W. Norton's continual practice of marketing and distributing books in South Carolina satisfies the power prong of the due process analysis." *Id.*

Conversely, Delo did not sell copies of its newspapers in South Carolina, did not employ any sales representatives to market its publication in South Carolina, and did not publish the articles in question directly in South Carolina. Delo merely posted the articles on its website, which is accessible worldwide. Hidria produced no evidence to refute Delo's showing that Delo has no commercial presence in, and derives no revenue from, South Carolina.

Moreover, Hidria's argument that the Internet availability of Delo's articles subjects Delo to personal jurisdiction in South Carolina fails in light of the *Moosally* analysis as applied to its author defendant. *See Aviation Assocs.*, 303 S.C. at 507, 402 S.E.2d at 180 ("[T]he focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity.").

Hidria contends that *Leggett v. Smith*, 386 S.C. 63, 686 S.E.2d 699 (Ct.App.2009), supports a finding that Delo engaged in contacts sufficient to establish personal jurisdiction in South Carolina. We disagree.

In *Leggett*, a New York insurance company issued a personal automobile liability policy to a New York couple that covered several of the couple's cars, including one used by the couple's son, who attended Coastal Carolina University. *Id.* at 70, 686 S.E.2d at 703. During the policy period, the son became a South Carolina resident and acquired title of the car from his father. *Id.* Son was involved in an accident with a motorcyclist, who brought suit against Son and his parents for negligence. *Id.* at 70–71, 686 S.E.2d at 703–04. The motorcyclist also sought a declaratory judgment that the New York insurer was obligated to provide coverage for the damages sustained in the accident. *Id.* at 71, 686 S.E.2d at 704.

The New York insurance company argued the court lacked personal jurisdiction due to its lack of the requisite minimum contacts with South Carolina. *Id.* This court disagreed, holding that, although the insurer issued no policies directly to South Carolinians, (1) the policy's coverage territory included South Carolina, (2) insurer had notice that an insured vehicle was being kept in South Carolina by Son, and (3) Son's mother informed the insurer's agent that he would be taking the vehicle to South Carolina. *Id.* at 76, 686 S.E.2d at 706. These facts were sufficient to establish the required minimum contacts as the out-of-state insurance company "purposely availed" itself of the benefits of conducting business in South Carolina. *Id.*

As the circuit court correctly detailed in its order of dismissal, Hidria has made no such showing as to Delo. Therefore, *Leggett* is distinguishable from the instant case. Accordingly, because we find Delo lacked sufficient contacts with South

Carolina, we affirm the circuit court's order of dismissal for lack of personal jurisdiction over Delo.

## 2. "Effects Test"

■ Alternatively, Hidria argues that, even if Delo lacked sufficient minimum contacts with South Carolina, the circuit court erred in dismissing Hidria's complaint because personal jurisdiction over Delo was acquired when Delo intentionally targeted Hidria in South Carolina. As Hidria cannot demonstrate that South Carolina has personal jurisdiction over Delo under the "effects test" established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), we disagree.[2]

In *Calder*, a California actress brought a libel suit in a California state court against a reporter and an editor of the Florida-based *National Enquirer*. 465 U.S. at 784, 104 S.Ct. 1482. The claim arose from an article written and edited by the defendants in Florida for publication in the *National Enquirer* weekly newspaper, which had a circulation in California of approximately 600,000 issues. *Id.* at 784–85, 104 S.Ct. 1482. The editor of the newspaper testified that he was a Florida resident and had only visited California twice: once for pleasure prior to the article's publication and once to testify in an unrelated matter. *Id.* at 786, 104 S.Ct. 1482. The reporter testified that he visited California six to twelve times per year for business, but he had not visited the state in connection with his preparation of the article and he conducted his research through telephone calls to sources in California. *Id.* at 785–86, 104 S.Ct. 1482. The Supreme Court applied the "effects test" to hold that California's assertion of personal jurisdiction over the defendants was consistent with due process. *Id.* at 788, 104 S.Ct. 1482.

■ "Rather than focusing only on the defendant's conduct within or contacts with the forum, the 'effects test' set forth in *Calder* allows long-arm jurisdiction to be based on the effects within the forum of tortious conduct outside the forum." *Pitts v. Fink*, 389 S.C. 156, 167, 698 S.E.2d 626, 632

---

2. We recognize that our supreme court has not adopted the "effects test;" however, Hidria raised the question of the "effects test" before the circuit court and in this appeal. Therefore, we address it here.

(Ct.App.2010) (citing *Calder*, 465 U.S. at 787, 104 S.Ct. 1482). To satisfy this test, a plaintiff must establish three elements: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 n. 7 (4th Cir.2003). South Carolina has not specifically adopted *Calder*'s "effects test." *See Pitts*, 389 S.C. at 168, 698 S.E.2d at 632 ("While courts are split in their interpretation of the breadth of the *Calder* 'effects test,' courts unanimously agree the test requires that the defendant commit an intentional tort aimed at the forum state").

Although South Carolina has not had the opportunity to fully consider the "effects test," the United States Court of Appeals for the Fourth Circuit has provided helpful analyses. In *Young v. New Haven Advocate*, the Fourth Circuit held that, in a defamation context, to show that the forum "can be said to be the focal point of the tortious activity," a plaintiff must establish that the speaker "manifested an intent to target and focus on" the readers of the forum state. 315 F.3d 256, 263 (4th Cir.2002).

*Young* involved several articles published by two Connecticut newspapers, both in hard copy and on their respective websites, concerning Connecticut's policy of transferring prisoners to Virginia for long-term incarceration. *Id.* at 259. The articles focused on the conditions in one specific Virginia prison and on the warden of that prison. *Id.* The warden brought a defamation action in Virginia, asserting Virginia had personal jurisdiction because (1) the reporters had made phone calls to Virginia in researching the story; (2) the articles concerned events and conditions in Virginia; (3) the articles were posted on their websites, which could be accessed in Virginia; (4) the warden's reputation was harmed; and (5) he suffered injury in Virginia. *Id.* at 261–62.

Applying *Calder* and its own precedent, *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir.2002), the Fourth Circuit explained:

> We thus ask whether the newspapers manifested an intent to direct their website content—which included certain articles discussing conditions in a Virginia prison—to a Virginia audience. As we recognized in *ALS Scan*, "a person's act of placing information on the Internet" is not sufficient by itself to "subject[ ] that person to personal jurisdiction in each State in which the information is accessed." Otherwise, a "person placing information on the Internet would be subject to personal jurisdiction in every State," and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted. Thus, the fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience. Something more than posting and accessibility is needed to "indicate that the [newspapers] purposefully (albeit electronically) directed [their] activity in a substantial way to the forum state," Virginia. The newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers.

*Young*, 315 F.3d at 263 (citations omitted). Because "the overall content of [the] websites is decidedly local," as the majority of the content was directed at a local or state audience, the court stated "it appears that these newspapers maintain their websites to serve local readers in Connecticut, to expand the reach of their papers within their local markets with a place for classified ads. The websites are not designed to attract or serve a Virginia audience." *Id.* The Fourth Circuit ultimately concluded "[t]he newspapers did not post materials on the Internet with the manifest intent of targeting Virginia readers" and, therefore, it would violate the defendants' due process rights for a Virginia court to exercise personal jurisdiction over them. *Id.* at 264.

More recently, the United States Supreme Court reached a similar conclusion in *Walden v. Fiore*, —— U.S. ——, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). In *Walden*, a Georgia police officer working as a deputized DEA agent at a Georgia airport searched the respondent airline passengers and seized a large amount of cash. *Id.* at 1119. Respondents alleged that, after they returned to their residence in Nevada, the police officer

helped in the drafting of a false probable cause affidavit in support of the cash's forfeiture and forwarded it to the United States Attorney's Office in Georgia. *Id.* at 1119–20. Ultimately, no forfeiture complaint was filed and the money was returned to respondents. *Id.* at 1120.

Respondents filed a tort suit against the Georgia police officer in the United States District Court for the District of Nevada, which dismissed the complaint for lack of personal jurisdiction. *Id.* On appeal, a divided panel of the United States Court of Appeals for the Ninth Circuit reversed the dismissal, holding that the district court "could properly exercise jurisdiction over 'the false probable cause affidavit aspect of the case.'" *Id.* at 1120 (citation omitted).

Reversing, the Supreme Court held the district court lacked personal jurisdiction over the police officer because

> Petitioner never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada. In short, when viewed through the proper lens—whether the *defendant's*, actions connect him to the *forum*—petitioner formed no jurisdictionally relevant contacts with Nevada.
>
> . . . .
>
> Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. . . .
>
> *Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way. . . .
>
> Unlike the broad publication of the forum-focused story in *Calder*, the effects of petitioner's conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction.

*Walden*, 134 S.Ct. at 1124–25.

We find Hidria has failed to demonstrate that Delo had a manifest intent to target South Carolina readers. The undis-

puted evidence establishes that the *Slovenske Novice* is a Slovenian newspaper—published only in Slovene—directed at its readership of citizens in the Republic of Slovenia on matters of local and national interest. Delo distributes no hard copies of its paper in South Carolina, and web traffic from South Carolinians is insignificant. The two articles in question concern the business activities and lifestyle of a Slovenian businessman, and the few references to Hidria were made in this context. Further, Hidria cannot show that Delo specifically targeted South Carolina readers. Thus, even if our supreme court were to recognize the "effects test," Hidria would be unable to satisfy its elements. Therefore, the circuit court properly declined to exercise personal jurisdiction over Delo.

## CONCLUSION

Based on the foregoing, the decision of the circuit court is **AFFIRMED.**

GEATHERS, J., concurs. WILLIAMS, J., concurs in result only.