# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Gloria Ormand-Ward by and through her Guardian and Conservator, CDM Corporation, through its representative, Stephen Mantell, Appellant,

v.

David Litt; Homedebone, LLC; Rosaria A. Alagna aka Rose Alagna; Chris Parker; Chicago Land Agency Services, Inc.; Chicago Title Insurance Company; Pereira Partners, LLC; NB Labor LLC d/b/a Newman Brothers General Contractors; John Newman; and Toorak Capital, LLC, Defendants,

Of which Chicago Title Insurance Company is the Respondent.

Appellate Case No. 2023-000239

_____

Appeal From Horry County
Michael G. Nettles, Circuit Court Judge

_____

Opinion No. 6127
Heard February 11, 2025 – Filed December 3, 2025

_____

**AFFIRMED**

_____

John M. Leiter, of Law Offices of John M. Leiter, PA, of Myrtle Beach, for Appellant.

Denny Parker Major, of Haynsworth Sinkler Boyd, PA, of Columbia, for Respondent.

**VINSON, J.:**  Gloria Ormand-Ward appeals the circuit court's order granting Chicago Title Insurance Company's Rule 12(b)(2), SCRCP, motion to dismiss for lack of personal jurisdiction.  Ormand-Ward argues the circuit court erred by finding it lacked personal jurisdiction over Chicago Title because it (1) consented to general jurisdiction under section 38-5-70 of the South Carolina Code (2015) by becoming a licensed insurer in this state and appointing the Director of the Department of Insurance as its attorney for service of process and (2) was subject to the specific jurisdiction of the court.  We affirm.

## FACTS

Ormand-Ward brought this action in November 2021, alleging she had been the victim of a scam in which an individual deceived her into selling her home (the Home) for $100 in exchange for his promise to pay a $5,526.50 homeowner's association lien and prevent the Home from being sold in foreclosure.

In January 2019, the homeowner's association (HOA) for Ormand-Ward's subdivision had placed a lien against the Home after she failed to pay outstanding assessments.  In September of the following year, the HOA filed a foreclosure action to collect $5,526.50 in assessments, late fees, and attorney's fees.

An individual who identified himself as David Litt contacted Ormand-Ward, offering to help her stop the foreclosure.  On February 4, 2021, Litt's company, Homedebone, LLC, prepared a warranty deed that Ormand-Ward purportedly signed via DocuSign,[1] transferring the Home to the company for $100.  She alleged either Chicago Land Agency Title Services (CLAS), Inc., Chicago Title, or both, electronically recorded the deed with the Horry County Register of Deeds.  The record includes a copy of an invoice showing CLAS charged Litt for the recording of the deed.

The next day, Ormand-Ward purportedly signed a "Durable Power of Attorney for Financial Management" via DocuSign, appointing Litt as her attorney-in-fact.  Litt then emailed Ormand-Ward, asking her to give him permission to communicate with the HOA's attorney regarding the details of the foreclosure.  She complied and requested the attorney give "complete access" to Litt.  One of the defendants then

---

[1] DocuSign is a cloud-based platform that allows users to sign documents remotely by using an electronic signature.

paid the HOA lien. The HOA released the lien, the lis pendens was canceled, and the foreclosure action was dismissed on February 22, 2021.

Six weeks later, Homedebone conveyed the Home to a third party for $260,000, and Ormand-Ward was ousted from her home. For the next few months, Ormand-Ward, who was in her late seventies at the time, lived in a homeless shelter and in her vehicle until she was hospitalized due to her declining physical and mental health. After a lengthy stay in the hospital, Ormand-Ward was moved to a long-term care facility.[2]

Ormand-Ward named several defendants in this action, including Litt, Homedebone, Rosaria A. Alagna,[3] CLAS, and Chicago Title. She alleged causes of action against CLAS and Chicago Title for negligence, quiet title, intentional infliction of emotional distress, violation of the South Carolina Unfair Trade Practices Act, slander of title, and civil conspiracy. Ormand-Ward asserted CLAS and Chicago Title were engaged in a joint venture and therefore the actions of CLAS were attributable to Chicago Title. She alleged CLAS, Chicago Title, or both were negligent in recording the fraudulent deed.

Chicago Title moved to dismiss Ormand-Ward's claims against it under Rule 12(b)(2), SCRCP, for lack of personal jurisdiction. Chicago Title, a Florida corporation with its principal place of business in Florida, argued South Carolina courts had no general jurisdiction over it because it was not "at home" in South Carolina as required under the *Daimler AG*[4] and *International Shoe*[5] decisions. In addition, it argued that specific jurisdiction did not exist because it did not direct any suit-related activities towards South Carolina; it was not a joint venture partnership with CLAS because Chicago Title was a shareholder of CLAS and both were corporate entities and therefore could not be in a joint venture; and Ormand-Ward made no allegations that Chicago Title was an alter ego of CLAS. With its motion, it attached the affidavit of Michael Cusack, the executive vice president of Chicago Title. In the affidavit, Cusack testified Chicago Title was

---

[2] During her hospital stay, the hospital filed a petition with the probate court for the appointment of a guardian and conservator for Ormand-Ward, and the probate court granted the petition.

[3] Alagna signed as a purported witness and notary public on the deed to Homedebone.

[4] *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

[5] *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

licensed to write insurance in South Carolina but did not issue a title policy relating to the Home. He further testified Chicago Title owned 49.9% of shares in CLAS.

Ormand-Ward argued Chicago Title conducted substantial title insurance business in South Carolina and consented to the state's general jurisdiction by becoming a licensed insurer in South Carolina and appointing the Director of the Department of Insurance (the Director) as its attorney for service of process. She relied on *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), to support this argument.

The circuit court granted Chicago Title's motion, concluding it lacked both general and specific jurisdiction over Chicago Title. It held Chicago Title was not subject to general jurisdiction in South Carolina because *Pennsylvania Fire* was decided prior to, and was not consistent with, the subsequent holdings of *International Shoe* and *Daimler*. Specifically, the circuit court determined compliance with section 38-5-70 was not sufficient to confer general jurisdiction without establishing Chicago Title had sufficient minimum contacts in this state, as required under *International Shoe* and *Daimler*.

The circuit court further found that even if *Pennsylvania Fire* were still good law after *Daimler* and *International Shoe*, Chicago Title did not consent to general jurisdiction by complying with section 38-5-70 because South Carolina courts have not interpreted the statute as imposing that condition. The circuit court acknowledged our courts have not specifically addressed whether compliance with section 38-5-70 confers general jurisdiction but relied upon *Builder Mart of America, Inc.*[6] as providing analogous support for its ruling.

The circuit court next held it lacked specific jurisdiction because (1) no joint venture partnership existed between CLAS and Chicago Title because CLAS was a corporation and therefore could not be a joint venture by definition; (2) evidence did not support Ormand-Ward's contention that CLAS and Chicago Title were

---

[6] *Builder Mart of Am. Inc. v. First Union Corp.*, 349 S.C. 500, 563 S.E.2d 352 (Ct. App. 2002) (holding a North Carolina corporation's registration to do business and appointment of an agent for service in South Carolina in compliance with section 33-15-101 of the South Carolina Code (2006) was not sufficient to support *specific* jurisdiction when the corporation did not actually conduct any business activities in South Carolina), *overruled in part on other grounds by Farmer v. Monsanto Corp.*, 353 S.C. 553, 579 S.E.2d 325 (2003).

partners in a joint venture that was separate from CLAS; (3) even if CLAS and Chicago Title were joint venture partners in a separate joint venture, no evidence showed CLAS's recording of the deed was within the scope of such joint venture as opposed to CLAS's own business; and (4) even assuming CLAS and Chicago Title were joint venture partners and the deed was within the scope of such joint venture, no evidence showed such joint venture was contemplated and actually involved substantial performance in South Carolina.

Ormand-Ward filed a Rule 59(e), SCRCP, motion, which the circuit court denied. This appeal followed.

## ISSUES ON APPEAL

I.  Did the trial court err by finding Chicago Title was not subject to general jurisdiction pursuant to section 38-5-70?

II.  Did the trial court err by finding Chicago Title was not subject to the specific jurisdiction of the court?

## STANDARD OF REVIEW

The circuit court's ruling on the question of personal jurisdiction over a nonresident "should be affirmed unless unsupported by the evidence or influenced by an error of law." *Cribb v. Spatholt*, 382 S.C. 490, 496, 676 S.E.2d 714, 717 (Ct. App. 2009).

"At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits." *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005).  "When a nonresident defendant attacks the allegations of a complaint based on jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction." *Cribb*, 382 S.C. at 497, 676 S.E.2d at 718 (quoting *Power Prods. & Servs. Co. v. Kozma*, 379 S.C. 423, 430, 665 S.E.2d 660, 664 (Ct. App. 2008)).

## ANALYSIS

## I.  General Jurisdiction

Ormand-Ward argues Chicago Title's licensure under section 38-5-70 as a foreign insurer in South Carolina allows courts of this state to exercise general jurisdiction over it. She contends that by becoming an admitted insurer in this state and consenting to the Director serving as its agent for acceptance of service of process under section 38-5-70, Chicago Title also consented to the general jurisdiction of South Carolina. We disagree.

"Personal jurisdiction is exercised as 'general jurisdiction' or 'specific jurisdiction.'" *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007). "General jurisdiction is the State's right to exercise personal jurisdiction over a defendant even though the suit does not arise out of or relate to the defendant's contacts with the forum . . . ." *Id.* "Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifically from a defendant's contacts with the forum; specific jurisdiction is determined under [section] 36-2-803 [of the South Carolina Code (Supp. 2025)]." *Id.*

"The exercise of personal jurisdiction . . . must comport with due process requirements and must not offend traditional notions of fair play and substantial justice. Due process requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Id.* (citation omitted); *cf. Pa. Fire Ins. Co.*, 243 U.S. at 95 (holding the requirement in a state statute that out-of-state insurers wishing to do business within the state must agree to appoint a state official to accept service on the insurer's behalf and accept such service as valid in any suit in the state "did not deprive the [insurer] of due process of law").

We hold section 38-5-70 did not confer general jurisdiction over Chicago Title upon the courts of this state because (1) the statute does not expressly indicate that by appointing the Director as its attorney for service of process, the insurer also consents to the jurisdiction of the state and (2) our state courts have not interpreted this statute as imposing such a condition.

Section 38-5-70 provides,

> Every insurer shall, before being licensed, appoint in
> writing the director and his successors in office to be its
> true and lawful attorney upon whom all legal process in
> any action or proceeding against it must be served and in
> this writing shall agree that any lawful process against it

which is served upon this attorney is of the same legal force and validity as if served upon the insurer and that the authority continues in force so long as any liability remains outstanding in the State.

Chicago Title acknowledges the "traditional minimum contacts" analysis of *International Shoe* and *Daimler* does not apply when jurisdiction is based on the defendant's alleged consent. Because Ormand-Ward argues Chicago Title was a consenting defendant, the traditional minimum contacts analysis does not apply here.[7]

As Chicago Title also acknowledges, in the recent *Mallory* decision, which was decided after the circuit court issued its ruling, the United States Supreme Court reiterated that not only is *Pennsylvania Fire* still good law, it is not inconsistent with the *International Shoe* decision. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137 (2023). Instead, the Court opined "[t]he two precedents sit comfortably side by side." *Id.*; *see also id.* at 141 n.8 ("[N]othing in *International Shoe* purported to address, let alone condemn, consent statutes.").

In *Pennsylvania Fire*, the United States Supreme Court held a Missouri state statute requiring out-of-state insurers wishing to do business within the state to agree to appoint a state official to accept service on the insurer's behalf and to accept that service as valid in any suit in the state "did not deprive the [insurer] of due process of law." 243 U.S. at 95; *see also Mallory*, 600 U.S. at 133 (noting the Court in *Pennsylvania Fire* held an out-of-state insurer "could be sued in Missouri by an out-of-state plaintiff on an out-of-state contract because [the insurer] had agreed to accept service of process in Missouri on any suit as a condition of doing business there"); *cf. Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 23 (2025) (declining to address the respondents' consent-based argument when the statute at issue in that case "tie[d] the assertion of jurisdiction to predicate conduct that in and of itself b[ore] a meaningful relationship to the United States").

---

[7] In a footnote, Ormand-Ward argues Chicago Title's regular participation in litigation in South Carolina shows that its contacts in South Carolina are continuous, systematic, and substantial. Because this argument is made in a footnote, without supporting authority, we decline to address it. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal.").

Pursuant to *Pennsylvania Fire*, a consent statute confers general jurisdiction over a person only if (1) it expressly indicates that by complying, the person consents to the jurisdiction of the state or (2) the courts of that state have interpreted the statute as imposing such a condition. *See* 243 U.S. at 95 (affirming the Supreme Court of Missouri's interpretation of its own statute as conferring consent to personal jurisdiction); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 137 (4th Cir. 2020) ("Under the rules set out in *Pennsylvania Fire* . . . obtaining the necessary certification to conduct business in a given state amounts to consent to general jurisdiction in that state *only if that condition is explicit in the statute or the state courts have interpreted the statute as imposing that condition*." (emphasis added)).

In *Fidrych*, the Fourth Circuit Court of Appeals held that even if *International Shoe* and *Daimler* did not affect the rules set out in *Pennsylvania Fire*, a foreign corporation "did not consent to general jurisdiction by complying with South Carolina's domestication statute." 952 F.3d at 137; *see* § 33-15-101(a) ("A foreign corporation may not transact business in this State until it obtains a certificate of authority from the Secretary of State.").

By its plain language, section 38-5-70 does not expressly indicate that compliance with the statute subjects the insurer to the general jurisdiction of the state. *See CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) ("The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." (quoting *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007))); *id.* ("In doing so, we must give the words found in the statute their 'plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" (quoting *Sloan*, 371 S.C. at 499, 640 S.E.2d at 459)). In our view, the statute's wording that "so long as any liability remains outstanding in the State" indicates the legislature's intention that any personal jurisdiction conferred by the statute would be limited to specific, rather than general, jurisdiction. *See* § 38-5-70. The statute provides only that service upon the Director "is of the same legal force and validity as if served upon the insurer." *Id.* As we read the statute, this language does not expressly indicate that an out-of-state insurer agrees to submit to the general jurisdiction of this state merely by appointing the Director as its attorney for service of process in compliance with the statute.

Further, our state courts have not interpreted section 38-5-70 to confer general jurisdiction over an out-of-state insurer. Ormand-Ward argues South Carolina case law expressly confirms section 38-5-70 creates jurisdiction over a foreign insurer that has voluntarily complied with its provisions to become licensed to sell

insurance in this state and cites to *White Oak Manor, Inc.*[8] and *Equilease Corp.*[9] in support. We disagree.

In *Equilease*, our supreme court held the substituted service statute, section 38-52-50 of the South Carolina Code (1976) (now codified at section 38-25-520(a)),[10] conferred jurisdiction over a foreign insurance company. *See Equilease*, 275 S.C. at 481-82, 272 S.E.2d at 790. However, the court did not address section 38-5-70 in that case. *See id.* at 484 n.1, 272 S.E.2d at 791 n.1. Further, the insurer in that case did not dispute personal jurisdiction. *Id.* at 482-83, 272 S.E.2d at 791. Thus, *Equilease* did not address whether an insurer's compliance with section 38-5-70 confers general jurisdiction over the insurer.

Similarly, in *White Oak Manor*, our supreme court did not specifically address the issue of whether section 38-5-70 confers general personal jurisdiction upon the courts of this state. The issue in that case was whether a "service-of-suit" clause in the insurance policy was a valid alternative method of service that was binding on the insurer notwithstanding the provisions of section 15-9-270.[11] *See White Oak Manor*, 407 S.C. at 5, 753 S.E.2d 537 at 539. The insurer argued section 15-9-270 required service of process be made through the Director and that any contrary contractual provision was invalid. *Id.* at 6, 753 S.E.2d at 539. The court noted,

> We have previously interpreted insurance service statutes
> as "designed by the legislature to provide a simple and

---

[8] *White Oak Manor, Inc. v. Lexington Ins. Co.*, 407 S.C. 1, 753 S.E.2d 537 (2014).

[9] *Equilease Corp. v. Weathers*, 275 S.C. 478, 272 S.E.2d 789 (1980).

[10] *See* S.C. Code Ann. § 38-25-520(a) (2015) ("The issuance and delivery of a policy of insurance or contract of insurance or indemnity to any person in this State or the collection of a premium thereon by an insurer not licensed in this State, as herein required, irrevocably constitutes the director and any successor of his in office the true and lawful attorney in fact upon whom service of any and all processes, pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made.").

[11] *See* S.C. Code Ann. § 15-9-270 (2005) ("The summons and any other legal process in any action or proceeding against [an insurance company] must be served on an insurance company . . . by delivering two copies of the summons or any other legal process to the Director of the Department of Insurance, as attorney of the company . . . . A company shall appoint the director as its attorney pursuant to the provisions of section 38-5-70. This service is considered sufficient service upon the company.").

easy method of obtaining jurisdiction over a foreign insurance company." Thus, their purpose is to provide an insured with a method to obtain service of process on insurance companies . . . .

*Id.* at 9, 753 S.E.2d at 541 (quoting *Equilease Corp.*, 275 S.C. at 483, 272 S.E.2d at 791). After considering the "long-standing rule that service can be consented to by the parties or waived entirely," the court held section 15-9-270 did not provide the exclusive method of service on an insurance company and the insurer was bound by its own policy's terms. *Id.* at 9-10, 753 S.E.2d at 541-42. Although *White Oak Manor* acknowledged a party can consent to service, it did not directly address whether an insurer's agreement to appoint the Director as its attorney for the service of process constitutes the insurer's consent to general jurisdiction in South Carolina.

The circuit court in this case relied upon *Builder Mart* to support its conclusion that section 38-5-70 does not confer jurisdiction. In that case, this court held that an out-of-state corporation's registration to do business and the appointment of an agent for service of process in South Carolina under section 33-15-101 was not sufficient to support jurisdiction. *See Builder Mart*, 349 S.C. at 505-06, 563 S.E.2d at 355; § 33-15-101(a) ("A foreign corporation may not transact business in this State until it obtains a certificate of authority from the Secretary of State."); *see also* § 33-15-101, Reporter's Comments § 2 ("The new law, like the prior provision, contains a 'laundry list' of activities that do not constitute transacting business. The 1981 South Carolina Business Corporation Act specifically said that this listing was not a 'standard' for determining whether a corporation was subject to service of process ('long arm' jurisdiction). The new law indicates the same thing by limiting the application of the list to the purpose of the subsection, i.e., defining what is meant by transacting business for registration purposes. A corporation can be qualified to do business in South Carolina and have appointed an agent for service of process but still not be conducting sufficient activities in South Carolina to be subject to suit here." (citation omitted)). Moreover, the court's discussion of compliance with section 33-15-101 as a basis for personal jurisdiction in *Builder Mart* concerned specific, rather than general, jurisdiction. *See* 349 S.C. at 505-10, 563 S.E.2d 355-57. Thus, *Builder Mart* did not settle the question of whether an insurer's compliance with section 38-5-70 would constitute consent to general jurisdiction.

Ormand-Ward additionally contends a federal district court decision supports her position. In *Wofford v. Prudential Insurance Co. of America*, 65 F. Supp. 637, 639

(D.S.C. 1946), the federal district court rejected the insurer's arguments that venue was improper and that service of process was insufficient when the district court had subject matter jurisdiction over the case and the insurer appointed an agent for service of process in compliance with the prior version of section 38-5-70. *See also* S.C. Code Ann. § 7964 (1942). The insurance company, which was a citizen of New Jersey, was served in accordance with the statute. *Wofford*, 65 F. Supp. at 639. The district court held that by appointing an agent for service of process, the defendant "waived the provisions of the [federal] venue statute, and by such act ha[d] consented to be sued in this court." *Id.* at 640. However, we find *Wofford* distinguishable because it considered the issue in the context of the federal venue statute. Regardless, decisions of the federal district court interpreting our state statutes are not binding on our state courts. *See Santee River Cypress Lumber Co. v. Query*, 168 S.C. 112, 117, 167 S.E. 22, 24 (1932) ("We are not bound by the construction placed upon [our state's] statute by any federal court . . . ."). Further, we have been unable to identify any South Carolina state or federal appellate court decisions that have considered *Wofford* or interpreted it as holding that mere compliance with section 38-5-70 confers general jurisdiction over a foreign insurer upon this state.

In addition, a recent district court decision expressly contradicts such an interpretation. In that case, the district court held foreign insurance corporations did not consent to the general jurisdiction of South Carolina courts by appointing the Director as their agent for service of process under section 38-5-70. *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. CV 2:18-2873-RMG, 2023 WL 6846676, at *5 (D.S.C. Oct. 17, 2023). The district court found the *Fidrych* decision controlled and held *Mallory* was distinguishable because section 38-5-70 "lacks a provision by which a foreign insurance carrier must consent to jurisdiction in South Carolina as a condition of doing business within the state." *Id.* at *5. Although this decision is not binding upon our courts, it further demonstrates the reluctance of courts to interpret this statute in the way Ormand-Ward urges.

Based upon the foregoing, we conclude our appellate courts have not interpreted section 38-5-70 as providing that an insurer, solely by complying with the statute's requirement that it appoint the Director as its agent for service of process, has subjected itself to this state's general jurisdiction.

Because section 38-5-70 does not expressly provide that the insurer by complying with the statute agrees to be subject to the general jurisdiction of South Carolina courts and because our appellate courts have not interpreted the statute to confer

jurisdiction, we hold the circuit court did not err by finding it lacked general jurisdiction over Chicago Title.

## II. Specific Jurisdiction

Ormand-Ward argues the circuit court erred by finding it lacked specific jurisdiction over Chicago Title because she made a prima facie showing that CLAS and Chicago Title had formed a partnership and thus the issue of whether a partnership existed should have been submitted to a jury. Ormand-Ward contends the Chicago Title-CLAS partnership committed a tortious act in this state by engaging in the unauthorized practice of law when it recorded the deed with the Horry County Register of Deeds and this act injured a South Carolina resident. She argues this shows Chicago Title had sufficient minimum contacts to be subject to specific jurisdiction. We disagree.

"Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifically from a defendant's contacts with the forum; specific jurisdiction is determined under [section] 36-2-803 . . . ." *Coggeshall*, 376 S.C. at 16, 655 S.E.2d at 478.

"The determination of whether a court may exercise personal jurisdiction over a nonresident involves a two-step analysis." *Hidria, USA, Inc. v. Delo*, 415 S.C. 533, 540, 783 S.E.2d 839, 842 (Ct. App. 2016) (quoting *Sullivan v. Hawker Beechcraft Corp.*, 397 S.C. 143, 150, 723 S.E.2d 835, 839 (Ct. App. 2012)). "The trial court must (1) determine whether the South Carolina long-arm statute applies and (2) whether the nonresident's contacts in South Carolina are sufficient to satisfy due process." *Id.* (quoting *Sullivan*, 397 S.C. at 150, 723 S.E.2d at 839). "Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 330, 594 S.E.2d 878, 883 (Ct. App. 2004).

"The determination of whether the requirements of due process are satisfied involves a two-prong analysis of (1) the 'power' prong, under which minimum contacts grant a court the 'power' to adjudicate the action; and (2) the 'fairness' prong, which requires the exercise of jurisdiction to be 'reasonable' or 'fair.'" *Hidria, USA, Inc.*, 415 S.C. at 541, 783 S.E.2d at 843 (quoting *S. Plastics Co. v. S. Com. Bank*, 310 S.C. 256, 260, 423 S.E.2d 128, 131 (1992)). "The plaintiff bears the burden of satisfying both tests." *Id.* "If either prong fails, the exercise of personal jurisdiction over the [nonresident] defendant fails to comport with the

requirements of due process." *Id.* (alteration in original) (quoting *S. Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131).

> Under the power prong, a minimum contacts analysis requires a court to find that the defendant *directed its activities to residents of South Carolina and that the cause of action arises out of or relates to those activities*. Without minimum contacts, the court does not have the "power" to adjudicate the action. It is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Th[is] . . . requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.

*Id.* (emphasis added) (quoting *Moosally*, 358 S.C. at 331-32, 594 S.E.2d at 884).

South Carolina's long-arm statute provides, in relevant part,

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's . . . commission of a tortious act in whole or in part in this State . . . [or] causing tortious injury . . . in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered in this State . . . .

§ 36-2-803(A)(3)-(4). For specific jurisdiction to attach under the long-arm statute, "only a cause of action arising from acts enumerated in this section may be asserted against [the nonresident defendant]." § 36-2-803(B).

We hold the circuit court did not err by finding Ormand-Ward failed to satisfy her burden of establishing specific jurisdiction over Chicago Title. First, we conclude the circuit court applied the correct standard in ruling on this issue. *See Cockrell*, 363 S.C. at 491, 611 S.E.2d at 508 ("At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of

jurisdiction either in the complaint or in affidavits."); *see also Cribb*, 382 S.C. at 497, 676 S.E.2d at 718 ("When a nonresident defendant attacks the allegations of a complaint based on jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction." (quoting *Power Prods. & Servs. Co.*, 379 S.C. at 430, 665 S.E.2d at 664)).

Next, we find evidence supports the circuit court's finding that Ormand-Ward failed to show CLAS and Chicago Title were engaged in a joint venture or partnership.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." *Moore v. Moore*, 360 S.C. 241, 260, 599 S.E.2d 467, 477 (Ct. App. 2004); *see also* S.C. Code Ann. § 33-41-210 (2006). "To determine whether a partnership exists, the following tests are used: (1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management." *Moore*, 360 S.C. at 260, 599 S.E.2d at 477; *see also id.* at 261, 599 S.E.2d at 477-78 (holding when some evidence demonstrated the existence of a partnership, the trial court correctly denied the motion for directed verdict and submitted the issue to the jury).

"A joint enterprise exists where there are two or more persons united in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means and the agencies employed to execute such common purpose." *Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 147, 425 S.E.2d 764, 774 (Ct. App. 1992). "Further, in order to constitute a joint enterprise, there must be a common purpose and community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other with respect thereto." *Id.*

A joint venture is "[a] special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Gordon v. Rothberg*, 213 S.C. 492, 503, 50 S.E.2d 202, 207 (1948) (quoting *Dexter & Carpenter v. Houston*, 20 F.2d 647, 651 (4th Cir. 1927)). "Practically the only difference between a 'join[t] []venture' and a 'partnership' is that a partnership is ordinarily for the transaction of a general business of a particular kind, while a joint []venture relates to a single transaction." *Id.* at 503, 50 S.E.2d at 207 (quoting *Welling v. Crosland*, 129 S.C. 127, 141, 123 S.E. 776, 781 (1924)).

Ormand-Ward's amended complaint alleged "CLAS and Chicago Title are joint venture partners."  In opposing Chicago Title's motion to dismiss, she argued CLAS and Chicago Title had formed a partnership.  The evidence Ormand-Ward relied on includes the following: (1) the statement on CLAS's website that "CLAS is a joint venture partnership with Chicago Title";[12] (2) Chicago Title's Chicago office is located at the same address as CLAS's office; (3) three of CLAS's six officers are affiliated with Chicago Title; and (4) Cusack is a director of CLAS and is also an executive vice president of Chicago Title.

Regardless of whether the recording of the deed constituted a general business of a particular kind or a single transaction, no evidence shows CLAS and Chicago Title joined together for the purpose of recording deeds.  *See Gordon*, 213 S.C. at 503, 50 S.E.2d at 207 ("Practically the only difference between a 'join[t] []venture' and a 'partnership' is that a partnership is ordinarily for the transaction of a general business of a particular kind, while a joint []venture relates to a single transaction." (quoting *Welling*, 129 S.C. at 141, 123 S.E. at 781)).  Rather, the statement on CLAS's website indicated its business was to provide title insurance.  This case does not involve CLAS's or Chicago Title's provision of title insurance.  In addition, the record shows CLAS invoiced Litt for the recording of the deed and the invoice contained no reference to Chicago Title.  Taking the statement on CLAS's website as true and assuming a joint venture or partnership existed, no evidence showed that under these circumstances, the recording of the deed was related to the business of the partnership or that CLAS and Chicago Title joined together for the purpose of recording deeds.  *See* § 36-2-803(A)(3) ("A court may exercise personal jurisdiction over a person *who acts directly or by an agent* as to a cause of action arising from the person's . . . commission of a tortious act in whole or in part in this State." (emphasis added)); § 36-2-803(B) ("[O]nly a cause of action arising from acts enumerated in this section may be asserted against [the nonresident defendant].").

Further, because Chicago Title owns 49.9% of the shares in CLAS, it cannot also be in a partnership with CLAS.  *See* § 33-41-210 ("A 'partnership' is an association of two or more persons to carry on as co-owners a business for profit . . . .  However, any association formed under any other statute of this State or any statute adopted by authority, other than the authority of this State, is not a

---

[12] Ormand-Ward alleged CLAS's website states, "CLAS is a joint venture partnership with Chicago Title Insurance Company, the marquee name in title insurance.  This unique relationship has positioned CLAS to provide title insurance to real estate professionals in an accurate and timely manner."

partnership under this chapter unless the association would have been a partnership in this State before the adoption of this chapter on February 13, 1950."); *see also Gordon*, 213 S.C. at 503, 50 S.E.2d at 207 (stating a joint venture is "[a] special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation" (quoting *Dexter*, 20 F.2d at 651)).

As to the shared Chicago address, CLAS provided a lease showing "Chicago Title Co., LLC," which is a different entity from Chicago Title, as the lessor of a portion of the office building where CLAS also leases office space. CLAS denies that it shares office space with Chicago Title. Further, Chicago Title's principal address is in Jacksonville, Florida. Even if CLAS and Chicago Title share an office building in Chicago, we find this does not demonstrate the existence of a partnership. Other than the statement on CLAS's website and Chicago Title's ownership of shares in CLAS, Ormand-Ward has alleged no facts showing the sharing of profits and losses, community of interest in capital or property, or community of interest in control and management between the two entities. *See Moore*, 360 S.C. at 260, 599 S.E.2d at 477.

Based on the foregoing, we hold Ormand-Ward has failed to set forth facts showing the existence of a partnership and thus failed to establish that CLAS acted as Chicago Title's agent in recording the fraudulent deed. *See* § 36-2-803(A)(3)-(4) ("A court may exercise personal jurisdiction over a person *who acts directly or by an agent* as to a cause of action arising from the person's . . . commission of a tortious act in whole or in part in this State . . . [or] causing tortious injury . . . in this State by an act or omission outside this State . . . ." (emphasis added)). Thus, we hold the record supports the circuit court's finding Ormand-Ward failed to establish South Carolina had specific jurisdiction Chicago Title. *See Hidria, USA, Inc.*, 415 S.C. at 541, 783 S.E.2d at 843 ("The determination of whether the requirements of due process are satisfied involves a two-prong analysis of (1) the 'power' prong, under which minimum contacts grant a court the 'power' to adjudicate the action; and (2) the 'fairness' prong, which requires the exercise of jurisdiction to be 'reasonable' or 'fair.'" (quoting *S. Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131)); *id.* ("The plaintiff bears the burden of satisfying both tests."); *id.* ("If either prong fails, the exercise of personal jurisdiction over the [nonresident] defendant fails to comport with the requirements of due process." (alteration in original) (quoting *S. Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131)).

**CONCLUSION**

For these reasons, we affirm the circuit court's order granting Chicago Title's motion to dismiss for lack of personal jurisdiction.

**AFFIRMED.**

**KONDUROS and MCDONALD, JJ., concur.**